## Taylor v. State.

### Opinion delivered June 29, 1914.

1. SEDUCTION—CHASTITY OF FEMALE—DEFENSE.—A lack of chastity in the female constitutes a perfect defense to the charge of seduction under Kirby's Digest, § 2043. (Page 527.)

2. SEDUCTION—CONDITIONAL PROMISE OF MARRIAGE.—Sexual intercourse accomplished on a promise of marriage conditioned on pregnancy resulting, is not within a statute, making seduction under promise of marriage a criminal offense. (Page 527.)

3. SEDUCTION—CONDITIONAL PROMISE OF MARRIAGE—QUESTION FOR JURY. —In a prosecution for the crime of seduction, *held* it was a question for the jury, under the evidence, as to whether the sexual intercourse was obtained with no other promise than that defendant would marry the prosecutrix in the event that she became pregnant. (Page 527.)

4. SEDUCTION—PROMISE OF MARRIAGE.—Defendant will be held guilty of the crime of seduction, where he and the prosecutrix were engaged to be married, and that while engaged he induced the prosecutrix to have sexual intercourse with him, by promising that if she became pregnant, that he would marry her immediately, and

when she submitted to him because of her engagement and promise, provided that prior to said intercourse, she was chaste. (Page 528.)

5. CRIMINAL LAW—INDICTMENT AS EVIDENCE.—The indictment in a criminal action is of itself a mere accusation or charge against the defendant, and is not, of itself, any evidence of the defendant's guilt. (Page 529.)

6. CRIMINAL LAW—REASONABLE DOUBT—INGENUITY OF COUNSEL.—An instruction is properly refused which instructs the jury to acquit if a reasonable doubt as to defendant's guilt is raised in the minds of the jury by the ingenuity of counsel. (Page 529.)

7. EVIDENCE—SEDUCTION—LETTERS OF ACCUSED—ADMISSIBILITY.—In a prosecution for seduction, letters from defendant to prosecutrix expressing love and affection for her, are admissible in evidence, when identified by the prosecutrix, and her identification corroborated by another witness. (Page 529.)

8. SEDUCTION—IMPEACHING EVIDENCE—PROMISE OF MARRIAGE.—Affidavits made by certain witnesses that defendant told them that he was engaged to marry prosecutrix, in a trial for seduction, are admissible for purposes of impeachment. (Page 529.)

9. SEDUCTION—EVIDENCE—HARMLESS ERROR.—It is harmless error to admit in evidence, in a prosecution for seduction, affidavits made by certain witnesses that defendant told them that he was engaged to the prosecutrix, when the witnesses testified to the same facts. (Page 529.)

Appeal from Fulton Circuit Court; *Eugene Lankford,* Judge, on Exchange; affirmed.

### STATEMENT BY THE COURT.

The appellant was convicted of seduction. The prosecutrix testified that she was nineteen years old. She had known appellant since she was ten or eleven years old. They were sweethearts. He first began going with her in the summer or fall of 1910, and continued to do so until November, 1912. She and Taylor were engaged to be married in February, 1912. Taylor asked her to be his wife and she agreed to do so. They discussed the marriage often after their engagement, but no definite date was set when the marriage should take place. It was to be some time in the fall. Taylor had intercourse with her first in May, 1912. The reason she let him have intercourse with her was that they were

going to marry, and he said if anything got the matter with her that they would marry right away. He tried two months before their engagement to have intercourse with her and tried often. She discovered that she was pregnant in July, 1912, and informed Taylor of that fact and he wanted her to take medicine and destroy the child. He refused to marry her, and went to Oklahoma. The child was born and was Taylor's child.

The record shows the following:

Q. Is it not a fact that he promised to marry you if you became pregnant, and that is why you had intercourse with him?

A. He promised when we first had intercourse that he would marry me if anything happened.

Q. Had you ever refused him before this?

A. I had refused him a great many times.

Q. Would you have had intercourse with him the first time if he had not promised to marry you if anything happened?

A. No, sir.

Q. Then the reason you had intercourse with him was because he promised to marry you if you became pregnant, was it?

A. Yes, sir; we were already engaged, and he said if I became pregnant we would marry right away.

She was asked further: "Would you have made any complaint against Hogan Taylor if you had not got in a family way?" and answered, "No; I would not have complained if I had not got in a family way."

The court refused to allow counsel for Taylor to ask the prosecutrix the following question: "Would you like to see this defendant go to the penitentiary?" Appellant saved exceptions to the ruling of the court.

It was shown by the father and mother of Mary Trulson (prosecutrix) that Taylor kept company with their daughter for about a year, and was at their home almost every Sunday in the summer of 1912. "They went together to church, signings and other places often." Mrs. Trulson testified that Taylor courted her daughter

from January, 1912, through most of the year and had kept her company some before that; that they were in Missouri in 1911 and Taylor wrote to her daughter Mary while they were there.

It was shown that Taylor was wearing a ring that he said Mary Trulson gave him.

Witness I. E. Taylor testified, on behalf of the State, that he was a brother of the defendant; that Hogan told him in 1912 that he intended to marry Mary Trulson if he got her pregnant. He was asked if he made an affidavit before Squire Dotson, and admitted that he had. Stated that the affidavit was true, and that what he testified to was true.

Annie Taylor testified that she was the wife of I. E. Taylor and a sister-in-law to the defendant; that she heard Hogan tell her husband that he would marry Mary Trulson if he got her pregnant; that they were engaged to be married if he got her that way. She also stated that she signed an affidavit before Squire Dotson, which was true, and stated that it was also true that he said he would marry her if he got her pregnant. This witness further testified as follows: "Mary Trulson asked me if I thought Hogan would be as good as his word. She said she had missed, 'and if this is what is the matter with me, do you reckon Hogan will be as good as his word?' I told her I did not know what he would do."

While Mary Trulson was on the witness stand several letters were handed her by the prosecuting attorney, which she identified as letters she had received from Taylor while she was in Missouri.

Delcie Burton testified that she addressed two letters for Hogan Taylor to Mary Trulson. Stated that she guessed she would know Taylor's handwriting. She was asked if she had seen his writing and whether she was familiar with it, and replied: "Yes, sir; I have seen his writing." She was then handed certain letters and asked whether or not, to the best of her knowledge, these letters were written by the defendant, and replied in the affirmative. She was asked, on cross examination,

whether all the writing in these letters was the writing of the defendant, and answered that one page did not look like his writing. She was asked whether or not she knew Taylor's handwriting, and answered, ''I would not swear to it.'' She did not know whether the letters then in the envelopes were the letters that were in the envelopes when she addressed them and when they were mailed or not. She didn't know that the letters were in Taylor's handwriting.

. The prosecuting attorney, over the objection of appellant, was permitted to read certain letters, which were numbered from 1 to 5, inclusive. The letters were alleged to be the letters of Hogan Taylor to Mary Trulson, and they were full of expressions of love and of a desire of the writer to see his sweetheart and to be in her company, and to have her return to him, to send her picture, and expressing his desire to go to see her, etc. The appellant excepted to the ruling of the court in permitting the letters to be read.

The prosecuting attorney, over the objection of the appellant, was permitted to read the affidavits of I. E. Taylor and Annie Taylor made before Squire Dotson, justice of the peace, on the 31st of March, 1913, in which they stated that Hogan Taylor told them that he was engaged to Mary Trulson in the fall of 1912; that he had promised to marry her at that time. The appellant excepted to the ruling of the court admitting these affidavits.

On behalf of the appellant, several witnesses testified that the general reputation of Mary Trulson for truth and morality was bad. Testimony was also introduced tending to prove that she had made contradictory statements.

Among other instructions, the court gave the following:

''3. If you find from the evidence that the defendant and prosecuting witness, Miss T., were engaged to be married, and that while engaged, the defendant induced said Miss T. to have sexual intercourse with him

by promising that if she became pregnant he would marry her at once, and she submitted to him because of her engagement and promise, you should convict him, provided that prior to said intercourse she was chaste."

Among other prayers for instructions, the appellant offered the following, which was refused:

"16.   The court instructs you that if you find the defendant had intercourse with the prosecuting witness under a conditional promise of marriage, and the conditions were that the defendant would marry the prosecuting witness in the event that she became pregnant, then such a conditional promise would not be an express promise of marriage, and you should return a verdict of not guilty."

The appellant also asked the following prayer for instruction:

"10.   The jury are instructed that the indictment in this case is of itself a mere accusation or charge against the defendant, and is not, of itself, any evidence of the defendant's guilt (and no juror in this case should permit himself to be, to any extent, influenced against the defendant because or on account of the indictment in this case)."   The court amended the instruction by striking out that part in parentheses, and gave the same as thus amended.

Appellant also asked the following prayer for instruction:

"15.   The court instructed the jury that upon a trial of a criminal cause, if a reasonable doubt of any fact necessary to convict the accused is raised in the minds of the jury, by the evidence itself, or by the ingenuity of counsel, upon any hypothesis reasonably consistent with the evidence, that doubt is decisive in favor of the prisoner's acquittal."

This instruction was also refused.

To the rulings of the court in giving and refusing prayers for instructions appellant duly excepted.

The jury returned a verdict of guilty, and from a judgment sentencing appellant this appeal has been duly prosecuted. Other facts stated in the opinion.

*Watson & Chesnut* and *C. E. Elmore,* for appellant.

. 1. Instruction No. 3 is not the law, but No. 16 for defendant is the law, and should have been given. The only promise made was a conditional one. This does not constitute seduction. Kirby's Dig., § 2043; 22 L. R. A. 840; 39 N. E. 343; 11 A. & E. Enc. Law, 248; 12 Me. 71; 42 Ga. 289; 43 Tex. 402; 16 Tex. App. 34; 20 Cent. Law Jour. 123.

2. Handwriting can not be proven by opinion of nonexperts. 6 Enc. Ev. 423; 33 N. E. 657; 9 Okla. 569; 59 Kan. 172; 30 Oh. St. 600. The letters were incompetent. 77 Ark. 16.

3. In criminal cases neither depositions nor *ex parte* affidavits can be introduced. 14 Enc. Ev. 580; 48 Mich. 54; 66 S. W. 1098; 77 S. W. 3.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. Instruction No. 3 was properly given. 109 Ark. 130.

2. The statute was designed to protect chaste females from devices, tricks and artifices by which a lover, on promise of marriage, violates their persons. 38 S. E. 341; 68 L. R. A. 107; 138 N. W. 521.

3. Affidavits may be used to impeach a witness. 108 Ark. 316.

Wood, J., (after stating the facts). 1. Counsel for appellant contends that the only promise of marriage made by appellant to the prosecutrix was the conditional one to the effect that he would marry her in the event that she became pregnant, and that the sexual intercourse was obtained by appellant with the prosecutrix upon such promise, and that sexual intercourse obtained on a conditional promise is not seduction under our statute. Appellant's contention as to the law is sound.

The most effective snare which the licentious fowler could set in the way of chaste and unsuspecting females to draw them from the path of virtue is in the form of a false or feigned express promise of marriage. Doubtless more innocent and confiding girls and women have been caught in that trap than any other. Hence, the Legislature enacted our statute making it a penitentiary offense to obtain carnal knowledge of any female by virtue of any feigned or express promise of marriage. (Kirby's Digest, § 2043.) But the statute was leveled at the particular crime of obtaining carnal knowledge of a chaste female through an express promise of marriage. Its purpose was to protect virtuous womanhood, and not to prevent sexual intercourse with a female who was already unchaste. A lack of chastity in the female constitutes a perfect defense to the charge of seduction under this statute. See *Polk* v. *State,* 40 Ark. 482; *Puckett* v. *State,* 71 Ark. 62; *Walton* v. *State,* 71 Ark. 398; *Caldwell* v. *State,* 73 Ark. 139; *Rucker* v. *State,* 77 Ark. 23; *Wilhite* v. *State,* 84 Ark. 67; *Oldham* v. *State,* 99 Ark. 175.

If a woman consents to the act of sexual intercourse upon a promise of the man to marry her only in the event that pregnancy results from it, then the promise is based upon a condition that might not arise. Where a woman yields to sexual embraces upon such promise she is not sacrificing her virtue alone because of a desire to marry the man to whom she yields, but, in such case, she is indulging her lustful passion and is resting upon the promise of marriage only for protection and assistance when her disgrace shall have been discovered. But this statute can only be invoked by the female who to the very time of her fall had held her virtue, so to speak, as "the immediate jewel of her soul," and who was only induced to surrender it through the promise of the man whom she trusted to marry her and solely from a desire to have him keep that promise. The woman who yields her virtue for sexual pleasure and uses the promise of marriage only as a cloak or subterfuge to hide her disgrace is not

within the pale of the protection of this particular statute. As was aptly said by the Supreme Court of Oregon in construing a similar statute: "Its design is to protect the chaste woman from the assaults of a wicked and designing man who makes use of the most potent of all seductive arts to win the love and confidence of a woman by professions of love and marriage, and not one who is willing to gratify her own lustful desire." *State of Oregon* v. *Adams*, 22 L. R. A. 840.

In the latter case it was held that sexual intercourse accomplished on promise of marriage conditioned on pregnancy resulting is not within a statute making seduction under promise of marriage a criminal offense. The same was held in *People* v. *Van Alstyne*, 39 N. E. 343. See, also, *People* v. *Duryea*, 30 N. Y. Supp. 877.

But we do not agree with the learned counsel for appellant in his contention to the effect that the undisputed evidence shows that carnal knowledge of the prosecutrix was obtained solely on the conditional promise that appellant would marry her in the event that she became pregnant. It was a question for the jury, under the evidence, as to whether the sexual intercourse was obtained with no other promise than that appellant would marry the prosecutrix in the event that she became pregnant. True, the evidence shows conclusively that he promised to marry her if she became pregnant, but the jury were warranted in finding from her testimony, taken as a whole, that the intercourse was had on an express promise of marriage and that the condition as to pregnancy was only intended to hasten the marriage. The prosecutrix testified that appellant had tried often to have sexual intercourse with her before their engagement and she had persistently refused, but after they were engaged he said if she became pregnant "he would marry her right away." They had designated some time in the fall for the marriage to take place.

In *Cherry* v. *State*, 38 S. E. 341, the facts were similar, and the court held: "If a single woman allowed a married man to have sexual intercourse with her solely

because of a promise by him to marry her in the event she became pregnant it was purely a meretricious transaction and not a case of seduction. But if an engagement to marry at a designated time in the future already existed between a marriageable man and woman, and she, on the faith thereof, and because of the fact that he had won her affection and confidence, and under the influence of persuasions and entreaties, accompanied by a promise to immediately consummate the marriage in the event of pregnancy, to submit to his lustful embraces, it was a case of seduction.''

It follows that the law announced by the court in instruction No. 3 was correct. The court did not err in refusing prayer No. 16, for the reason that it ignored the testimony tending to show that the sexual intercourse was obtained by an absolute promise on the part of appellant to marry the prosecutrix, but to be consummated ''right away'' in the event of pregnancy.

2. The court did not err in refusing that part of instruction No. 10 included in the parentheses. The part given was complete without this. The part refused was but cautionary, and, in effect, argumentative.

There was no error in refusing appellant's prayer No. 15. This was fully covered by instruction No. 11*, which the court gave. Besides, the prayer was erroneous because it warranted the jury in entertaining a reasonable doubt that might be created in their minds not from the evidence, but merely ''by the ingenuity of counsel.''

The court did not err in permitting the letters to be read in evidence. These were sufficiently identified by the prosecutrix. Her testimony as to the identification was sufficiently corroborated by the testimony of Delcie Burton.

---

*Instruction No. 11.—You are instructed by the court that, in this case, the burden of proof rests upon the prosecution to make out and prove to the satisfaction of the jury, beyond a reasonable doubt, every material allegation in the indictment, and unless that has been done, you should find the defendant not guilty.

There was no prejudicial error to appellant in permitting the affidavits of the Taylors to be read in evidence. These affidavits were admitted by them, and the witnesses stated that the facts stated therein were true. It was for the jury to say whether or not these facts were in conflict with the testimony given by these witnesses at the trial. The court told the jury that the affidavits could only be considered for the purpose of impeachment. They were competent for that purpose. Moreover, if the facts set forth in the affidavits were true, as the witnesses stated, it was harmless error to allow the jury to consider them. It was but a repetition of the same facts, and the testimony was competent and relevant.

There was no reversible error in allowing the sheriff to testify that he went to Bristow, Oklahoma, to get the defendant. The sheriff was merely stating what he did through his deputy, stating it as a fact which he knew.

Finding no reversible error in the record, the judgment is affirmed.