TAYLOR *v.* STATE.

Opinion delivered July 11, 1927.

1. SEDUCTION—SUFFICIENCY OF EVIDENCE.—In a prosecution for seduction under a promise of marriage, evidence *held* to support a finding that the female alleged to have been seduced was an unmarried person.

2. SEDUCTION—CORROBORATION OF SEDUCED FEMALE.—In a prosecution for seduction under a promise of marriage, evidence *held* sufficient to support a conviction as against the contention that the testimony of the seduced female was not corroborated, either as to promise of marriage or as to the act of sexual intercourse.

3. CRIMINAL LAW—REFUSAL OF INSTRUCTION ALREADY COVERED.—In a prosecution for seduction, refusal of instructions correctly declaring the law as applied to the issues of the fact in the case *held* not error, where the instructions given fully and fairly declared the law applicable to all issues.

4. CRIMINAL LAW—ARGUMENTATIVE INSTRUCTIONS.—In a prosecution for seduction under promise of marriage, an instruction that the prosecuting witness was presumed virtuous and defendant pre-

sumed innocent, but that the presumption of innocence was greater than the presumption of virtue, was properly refused as such being argumentative and confusing.

5.   SEDUCTION—CHASTITY OF PROSECUTRIX—BURDEN OF PROOF.—In a prosecution for seduction under promise of marriage, the burden of proof is on the defendant to show that the prosecuting witness was not virtuous.

Appeal from Pike Circuit Court; *B. E. Isbell,* Judge; affirmed.

*Tom Kidd* and *Pinnix & Pinnix,* for appellant.

*H. W. Applegate,* Attorney General, and *John L. Carter,* Assistant, for appellee.

SMITH, J. Appellant was indicted for seducing Carrie Whisenhunt, an unmarried female, was convicted at his trial, and has appealed. The first insistence for the reversal of the judgment of the court sentencing him to a term in the penitentiary is that the testimony failed to show that the female alleged to have been seduced was an unmarried person. The testimony shows, however, that the woman alleged to have been seduced had been reared in that community, and the witnesses all called her Miss Whisenhunt, and she was referred to as the daughter of Bob Whisenhunt. Appellant and all the other witnesses who testified in the case had long been acquainted with her, and she testified that appellant courted her and agreed to marry her, and, by virtue of this promise, had carnal knowledge of her, and that she had never had sexual intercourse with any other man. This testimony, we think, sufficiently supports the finding that Miss Whisenhunt was an unmarried person.

It is also insisted that the testimony is not legally sufficient to support the conviction, in that the testimony of Miss Whisenhunt is not. corroborated either as to the promise of marriage or the act of sexual intercourse, both of which facts appellant denied.

Miss Whisenhunt testified that appellant began to visit her the second Sunday in April, 1924, and that he called nearly every Sunday after that, and frequently spent Saturday evenings with her. That he courted her,

and she fell in love with him, and that they became engaged on the second Sunday in May, and he asked her to have sexual intercourse with him, but she declined to yield, and he became angry and discontinued his visits for a few weeks, but he apologized for his request and resumed his visits, and they renewed their engagement. Appellant renewed his importunity that she have sexual intercourse with him, and insisted that it was not wrong, as they were going to marry, and she yielded because she loved him and believed he was going to marry her. This occurred the third Sunday in June, 1924. The acts of sexual intercourse were repeated, but always under and in reliance upon appellant's promise to marry her. Appellant continued his visits until September, when Miss Whisenhunt told him that she had become pregnant. Appellant declined to marry her, and went to Texas, and did not return until December. He then went to Colorado, where he remained until he was brought back to this State by the sheriff.

Miss Whisenhunt was corroborated as to the attentions paid her by appellant, and that, during this interval, his attentions were exclusive. Miss Whisenhunt gave birth to a boy child March 5, 1925.

T. A. Morphew testified that appellant told him in May, 1925, that he had come to see his wife, referring to Miss Whisenhunt, and that he was going to see her and give her $75 and then leave the country. Appellant asked witness to deliver this money, but witness declined to do so. On his cross-examination witness testified that appellant said he had come to see his wife and Clayton Penson's baby.

J. W. Penson testified that he saw appellant after his return, and appellant asked him had I seen his boy; was he a fine boy; how did he look? The child referred to was the baby to which Miss Whisenhunt had given birth. This witness testified that appellant said he would not deny it being his boy, and was asking how did he look, and was he a fine boy. Witness told appellant the child

was puny, and they did not think it would live, and appellant answered that he did not give a d——if it would die.

B. A. Penson testified that appellant admitted to him that he told Miss Whisenhunt a lie when he promised to marry her.

Appellant admitted that he had loved Miss Whisenhunt, and that, after the birth of the child, he had asked her why she was accusing him, and had also asked her if he was the father of the child, and that she had answered that it didn't make any difference whether he was the father of the child or not, she was going to send him "over the road" anyway.

We think this testimony sufficiently corroborative of that of Miss Whisenhunt to meet the requirement of the law, that the testimony of a female alleged to have been seduced be corroborated by other evidence.

The court gave only one of the instructions requested by appellant, the one given being to the effect that, although appellant had promised to marry the prosecuting witness, yet if the engagement was broken and he afterwards had intercourse without renewing his promise to marry, he would not be guilty of seduction. We have already said that Miss Whisenhunt admitted the engagement had been broken, but she also testified that it had been renewed, and that she yielded under the renewed promise.

Of the other instructions asked by appellant, several might well have been given, as they were correct declarations of the law as applied to the issues of fact in the case, but it appears that the instructions given fully and fairly declared the law applicable to all the issues of fact presented by the testimony.

The instructions given by the court required the jury to find beyond a reasonable doubt, before convicting appellant, that he had obtained carnal knowledge of Miss Whisenhunt by virtue of a false express promise of marriage, and that, prior to the act of intercourse, she was of chaste character, and the jury was directed to acquit the defendant if any reasonable doubt was entertained of

the previous chaste character of the prosecuting witness.
The jury was further instructed that it must be found
beyond a reasonable doubt, before defendant could be
convicted, that Miss Whisenhunt was induced to sur-
render her virtue through the promise of defendant to
marry her, and that only, and that, if she had yielded
her virtue for sexual pleasure, and not by reason of a
promise of marriage, the defendant would not be guilty.

The court also fully and correctly charged the jury
as to the necessity for corroboration both as to the
promise of marriage ·and the act of sexual intercourse,
and gave other instructions on the question of reason-
able doubt and the presumption of innocence.

Several witnesses testified, on behalf of appellant,
to the effect that they had had sexual intercourse with
Miss Whisenhunt prior to the time of her alleged seduc-
tion, but it is evident from the verdict returned under
the instructions given that the jury did not believe this
testimony.

Appellant requested an instruction numbered 15,
which reads as follows: ''You are instructed that the
prosecuting witness is presumed to be chaste and virtuous
and the defendant is presumed to be innocent, but the
presumption of innocence is greater than the presump-
tion of virtue.''

It is insisted that no other instruction given covered
this phase of the case, and that it was error to refuse this
instruction.

At § 61 of the chapter on ''Seduction'' in 24 R. C. L.,
page 777, it is said:

''Much conflict of opinion has resulted in determin-
ing whether, in the prosecutions for seduction, the burden
of proof rests on the State to prove the chastity of the
woman seduced, or on the defendant to prove her want
of chastity. In favor of the former position, it is con-
tended that the State must establish every element of the
offense beyond a reasonable doubt, and the chastity of
the woman is one of the essential elements. On the other
hand, it is contended that a woman is presumed to be

chaste until the contrary is shown. The majority rule favors the latter view; hence, the chastity of the woman is presumed in the first instance, and the defendant must introduce evidence of unchastity in order to take advantage of the defense. In support of this position it is contended that, while the law presumes the prisoner innocent until proved guilty, it does not follow that the State can use no presumptions.''

Our case of *Caldwell* v. *State,* 73 Ark. 139, 83 S. W. 929, 108 Am. St. Rep. 28, is cited as supporting what is there said to be the majority rule. This Caldwell case reviewed the authorities on the subject, and particularly the previous opinions of this court in the cases of *Polk* v. *State,* 40 Ark. 486, 48 Am. Rep. 17; *McArthur* v. *State,* 59 Ark. 431, 27 S. W. 628; and *Walton* v. *State,* 71 Ark. 398, 75 S. W. 1, in which last mentioned case it had been held that an indictment for seduction is bad which fails to allege that the prosecutrix was of previous chaste character.

This holding in the Walton case was modified in the Caldwell case, where it was held that it was not essential to allege the previous chastity of the prosecutrix, nor prove it, as there was a presumption of chastity. The holding in the Caldwell case was that the lack of chastity was an affirmative defense which the defendant might offer, and that, when made, the burden was on him to establish it, because of the presumption of chastity.

Numerous later cases have held that it was not improper to charge the jury that there was a presumption of chastity, although there was also a presumption of innocence. *Sutton* v. *State,* 163 Ark. 468, 260 S. W. 409; *Taylor* v. *State,* 113 Ark. 520, 169 S. W. 341; *Wilhite* v. *State,* 84 Ark. 67, 104 S. W. 531; *Rucker* v. *State,* 77 Ark. 23, 90 S. W. 151.

There is no conflict in the two presumptions. The presumption of chastity relates only to the burden of proof. Chastity need not be alleged in an indictment, nor need it be proved at the trial, because it is presumed. It may be shown that it does not exist, and that burden is

on the defendant who offers that defense, just as the burden of proof of an alibi is on the defendant who interposes that defense. But the accused is clothed with a presumption of innocence, notwithstanding the burden of establishing an affirmative defense when he interposes it, but the fact that he is presumed to be innocent does not relieve him of the burden of establishing an affirmative defense.

The instruction is argumentative and is confusing, for the reason that it appears to tell the jury that the indulgence of the presumption of innocence relieves the accused of the burden of establishing the affirmative defense of a lack of chastity.

An instruction numbered 2, given by the court, reads as follows:

"You are instructed that the prosecuting witness is presumed to be of chaste character, and the burden of proving that she was unchaste at the time of the alleged seduction is upon the defendant; but the burden is on the State upon the whole case to prove the defendant guilty from all the evidence in the case, beyond a reasonable doubt. If you have a reasonable doubt that the prosecutrix was of previous chaste character, you will acquit the defendant."

It thus appears that, while the jury was instructed that the burden was on the accused to show that the prosecutrix was unchaste, he was given the full benefit of the presumption of innocence with which the law clothed him.

There was no error in refusing to give this instruction.

We find no error in the record, and the judgment must be affirmed, and it is so ordered.