### John Dove v. The State.

#### *No. 991.   Decided May 13th, 1896.*

1.  **Continuance—Process for Witnesses.**

An application for continuance, for absent witnesses, should not only show that
process had been issued for the witnesses, but should also state the character of the
process, whether a subpœna or an attachment.   It should also state the facts that
showed how the process was issued and forwarded to the proper officers,

2.  **Same.**

An application for continuance must state the residence of the witness; and, when
it states that a witness is temporarily absent, it should state how long he had been
so absent and when he left the county of his residence.

3.  **Same—Alibi.**

When an application for continuance is to obtain witnesses by whom to prove an
alibi, to-wit, that defendant was in another county, the application should state the
facts, and not mere conclusions.   It should show that the witnesses were in another
county than the one in which the offense was committed, if that was the fact, at
the time it was committed, and that they had an opportunity to know, and did see
the defendant at said time, in said other county than the one in which the offense
was committed, and also the distance between the two counties.

4.  **Matters Outside the Record—Practice on Appeal.**

On appeal, the court will not consider matters complained of which are not con-
tained in the record.

5.  **Rape—Evidence Sufficient.**

See, evidence, stated on a trial for rape, which is Held: Amply sufficient to support
a verdict and judgment of conviction assessing the death penalty.

Appeal from the District Court of Palo Pinto.   Tried below before
Hon. J. S. Straughan.

This appeal is from a conviction for rape, the punishment being as-
sessed at death.   The indictment charged the appellant, John Dove alias
Albert Moore, with the rape of Mrs. Joe Meredith, in Palo Pinto County,
on the 23rd day of August, 1895.

Mrs. Joe Meredith testified to defendant's assaulting and ravishing her at her home. That she was just recovering from an attack of measles, and was very weak; weighed only 110 pounds. Her husband had left home in the morning. She was alone with two of her little children. Her nearest neighbor, Mr. Knight, lived about one-half or three-quarters of a mile from her house. Defendant came to her house about 11 o'clock a. m., and asked for a drink of water. She had never seen him before. Gave him a drink of water, and he went into the melon patch and got a watermelon; came back and sat down under an arbor in front of the house and ate it. He then got up and went up close to her and asked her if she was an Italian woman. She told him she was an American woman. He asked her the way to Gordon, and when she tried to tell him, he ran up in front of her and caught hold of her, and told her to go to her room. She told him she would die first, and defendant then crushed her down on the bed and had intercourse with her. She was so weak she could not resist him; could do nothing. She described defendant's horse, and the clothing he wore. When defendant left, she took her children and went to Mrs. Knight's. Upon her husband's return, she told him. She never saw defendant after the occurrence until she recognized him in jail after his arrest.

Other witnesses identified defendant, and testified to seeing defendant, some just before, and some just after the occurence, and described his clothing. With one, he traded his horse, which was afterwards proven to have been stolen. After complaint was filed against him, the sheriff traced him at various places, but without avail, until the following January, when he found him in the jail in Mt. Vernon, in Franklin County. Defendant's statements to the sheriff, after he was warned by that officer, tended strongly to identify him; and defendant stated to the sheriff that he had been in the penitentiary.

Defendant did not testify himself, nor introduce any witnesses.

*E. W. Nicholson*, for appellant.

*Mann Trice*, Assistant Attorney-General, for the State.

DAVIDSON, JUDGE:—Appellant was convicted of rape, and his punishment assessed at death, and he prosecutes this appeal. The only bill of exceptions in the record is as to the action of the court in overruling the motion for a continuance. The application states that it is "for the want of the testimony of John Whitesides, who is now in the Indian Territory temporarily, but who resides in Montague County, Texas; and Tom Cooper and Exa Cooper, who reside in Montague County, Texas; and Jim Turner, reputed to reside in Dallas County, Texas; and John Ogle, who is reputed to be in the Indian Territory; A. J. Dove and R. Long, who reside in Jack County, Texas. That process for each of said witnesses has been issued and returned, 'Witnesses not found.' That process for witnesses Tom Cooper, Exa Cooper, Jim Turner, and John Ogle was issued on the 4th day of March, 1896,.

the same day that a copy of the indictment in this case was served on defendant. That process was issued for A. J. Dove and A. Long to Jack County, Texas, on the 9th day of March, 1896. That process was issued for John Whitesides on the 4th day of March, 1896, and returned blank." The application states that process was issued for these witnesses, but does not state the character of the process, whether subpœna or attachment. It should have done this. It also should have stated, not simply that the process was issued, but the facts that showed how it was issued and forwarded to the proper officers. The application states that the process was returned, and refers to the same, and makes it a part of the application, but no exhibits of said process are found in the record. As to the witness, Ogle, it is not stated where he resides, but states that he is in the Indian Territory, and of course no process could have compelled his attendance. And it is also stated that John Whitesides is now in the Indian Territory temporarily, but does not state how long he had been there, or when he went from Montague County. As to the witnesses, Dove and Long, for whom it is said process was issued to Jack County, it appears that the same was not issued until the 9th day of March, and no reason is shown why process for these two witnesses was not issued on the 4th of March, when the process for the other witnesses was issued. It is stated in the application that the defendant "expects to prove by witnesses Tom Cooper, Exa Cooper, Jim Turner, and John Ogle and John Whitesides, A. J. Dove and A. Long that the defendant was in Clay County continuously during the month of August, 1895, and at the time the offense in question was alleged to have been committed, and was not and could not be at the place and at the time alleged in the indictment that the offense is alleged to have been committed." This is not the statement of any fact, but a mere conclusion. The residence of each of these witnesses is shown not to be in Clay County, but in other counties named. Certainly, if the defendant proposed to prove an alibi by these witnesses, he should have stated the facts that said witnesses were in Clay County during the time, and that they had opportunity to know and that they saw the defendant at the time the offense is alleged to have been committed in Clay County, Texas; and the distance of said Clay County (where it was proposed to prove that said defendant was at the time the offense was committed) from Palo Pinto County, where the crime is alleged to have been committed, should have been stated—that is, the facts which constitute the defendant's alibi, should have been set out in the application, and the facts stated which showed that said witnesses could testify to having seen the said defendant in Clay County at the time when it is alleged he committed said offense in Palo Pinto County. This was not done, and the application is not good in that respect. Appellant states in his brief that the attorneys who represented him in the court below were young attorneys, who were appointed by the court on the very day when appellant was tried, and that they had no opportunity to prepare his defense. There is

nothing in the record that shows this fact.  For aught that appears, the attorneys were connected with the case by employment from the outset. We cannot consider matters not contained in the record.  It is also insisted that this case should be reversed because the evidence does not sustain the verdict.  It appears from the record that appellant was a stranger in the neighborhood where the offense is alleged to have been committed, but he was identified by a number of persons in that immediate vicinity on the day before and on the day of the offense, and the day afterwards.  He stayed at the house of one Ben Gardenbire on the night of the 22nd of August, 1895,—a few miles from the place of the commission of the offense,—and was then riding a brown horse, which he endeavored to trade to the witness, Gardenbire.  On the 24th of August he stopped at the house of John Trout, which was about twenty miles from the vicinity of Thurber, where the offense was committed, in Erath County.  Here the defendant traded this brown horse for another horse and a watch and five dollars, with said Trout. The defendant was identified by these witnesses, and his identity was also established in connection with the brown horse.  The prosecutrix identified the defendant on the trial as the person who committed the outrage upon her. Other witnesses in the case give a general description of a man answering the defendant's description, who they saw in the vicinity where the outrage was committed on the day of its commission.  The testimony of the prosecutrix was of a positive character, and it is supported and corroborated by the testimony of the other witnesses.  The jury believed her statement, and we see no reason to disturb their finding.  The judgment is affirmed.

*Affirmed.*

HURT, Presiding Judge, absent.