MURRELL v. STATE. (No. 3844.)

(Court of Criminal Appeals of Texas. Dec. 1, 1915. On Motion for Rehearing, April 19, 1916.)

1. CRIMINAL LAW ⊗⇒1128(1)—APPEAL—REC-ORD—MATTERS OCCURRING AFTER TERM.

A record in criminal proceedings cannot be varied or qualified by matters occurring after the adjournment of court.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2951; Dec. Dig. ⊗⇒1128(1).]

2. CRIMINAL LAW ⊗⇒598(3)—CONTINUANCE—DILIGENCE.

Where accused, instead of sending interrogatories to an officer authorized to take depositions, mailed them to the postmaster of the town where witness resided, with the request that the postmaster deliver them to an officer authorized to take depositions, and sent no money to pay for taking the depositions, he did not use diligence to secure the testimony, and he is not entitled to a continuance to obtain it.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1336; Dec. Dig. ⊗⇒598(3).]

3. SEDUCTION ⊗⇒34—CRIMINAL LIABILITY — ELEMENTS OF OFFENSE.

To constitute the offense of seduction, it is not necessary that prosecutrix must have yielded solely in reliance on the promise of marriage, and not partly through love for the accused.

[Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 58–60; Dec. Dig. ⊗⇒34.]

4. CRIMINAL LAW ⊗⇒789(1) — TRIAL — IN-STRUCTIONS—REASONABLE DOUBT.

An instruction *held* to clearly apply the rule of reasonable doubt in favor of accused.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1846–1849, 1904, 1905, 1960, 1967; Dec. Dig. ⊗⇒789(1).]

Appeal from District Court, Coryell County; J. H. Arnold, Judge.

Baity Murrell was convicted of seduction, and appeals. Affirmed.

Mears & Watkins, of Gatesville, and Williams & Williams, of Waco, for appellant. C. C. McDonald, Asst. Atty. Gen., for the State.

HARPER, J. Appellant was convicted of seduction, and his punishment assessed at two years' confinement in the penitentiary.

[1] The first contention of appellant is that the court erred in overruling his motion for a continuance. In this motion he states he expects to prove by Sherman Hale that on one occasion he slept with the prosecutrix, Miss Mary Hale, and during said night had sexual intercourse with Miss Hale, and had had intercourse with her on various occasions prior to the time of the alleged seduction. The materiality of such testimony in this character of case cannot and will not be questioned. The court, in approving the bill, attaches the affidavit of Sherman Hale to his qualification of the bill, in which Sherman Hale swears that appellant could not make such proof by him; that he never at any time slept with Miss Mary Hale, and had never at any time had sexual intercourse with her; but he says,

on the other hand, not only that such proof could not be made by him, but that Miss Mary Hale's reputation for virtue and chastity is good. This affidavit was made after the adjournment of court for the term, and appellant's insistence that we cannot consider same is correct. Such an affidavit would have been admissible when the hearing on the motion for a new trial was had, but a record cannot be varied nor qualified by matters occurring after the adjournment of court.

[2] So the only question is: Did appellant use diligence in an effort to secure the attendance of the witness? If he did, he would be entitled to a reversal of the case. If not, the court committed no error in overruling the motion for a continuance and refusing to grant a new trial on that ground. Sherman Hale had lived in Coryell county a number of years, but moved from that county to Oklahoma in November, 1914. A complaint was filed against appellant in May, 1915, charging him with having seduced Miss Hale in December, 1914. He was bound over to the grand jury, and when that body met he was indicted, and his cause set for trial on the 26th day of July, 1915. Appellant, prior to that time, and after indictment, had a subpoena issued to Coryell county for Sherman Hale. The least diligence on his part would have ascertained that Sherman Hale had left Coryell county for Poteau, Okl., some six months prior to that time. However, when the case was called on the 26th of July, on motion of appellant the case was postponed for one week to give appellant an opportunity to take the depositions of the witness. He propounded interrogatories, time was waived by the district attorney, and he agreed that the depositions might be taken in answer to the original interrogatories by any officer authorized to take depositions. Appellant, instead of sending the interrogatories to an officer authorized to take depositions, mailed them to the postmaster at Poteau, Okl., with the request that the postmaster deliver them to an officer authorized to take depositions. No answers to the depositions were received, and it is not shown they were ever delivered to an officer authorized to take depositions. The postmaster was under no obligations to hunt up such an officer, and appellant admits he sent no money to pay for taking such depositions.

Was this diligence? There is no showing made that an officer authorized by law to take such depositions lived in Poteau, Okl., and as only a judge of the Supreme Court of that state, or a commissioner of deeds for this state who resides in Oklahoma, could take such depositions (Poteau not being the capital of that state), it is hardly probable such an officer lived in Poteau, and, if not, could appellant reasonably expect the post-

master of Poteau to look up such an officer and turn over the depositions to him, when no money was sent with which to pay for taking the depositions, or to pay the expenses of the postmaster. In Adams v. State, 19 Tex. App. 260, it is held by this court that, notwithstanding the waiver of the district attorney, the affidavit required by law in taking such depositions must be filed, or the appellant will be lacking in diligence. This question is also discussed in Swofford v. State, 3 Tex. App. 82, and holds appellant lacking in diligence for not placing the depositions in the hands of an officer authorized to take the depositions. All the decisions of this court hold that it is not only the duty of appellant to sue out the process, but it is his duty to place it in the hands of an officer who is authorized to execute the process. Dove v. State, 36 Tex. Cr. R. 107, 35 S. W. 648, and cases cited in section 601, page 395, White's Ann. Code Cr. Proc. As the application does not show that the depositions had been placed, or that the postmaster ever would place them, in the hands of an officer authorized to take the depositions of the witness, the court did not err in overruling the application for a continuance.

Again, if we consider the evidence heard on the trial of the case, which in ruling on the motion for a new trial the court had a right to consider, this evidence would show that Sherman Hale had a very limited acquaintance with Miss Mary Hale, and comparatively no association, and under such circumstances it would be remarkable if the facts stated in the application were true, unless she was a prostitute, and this the testimony most emphatically negatives, for the record discloses that her reputation for virtue and chastity was good in the community where she lived prior to the date of this alleged seduction. And under such circumstances we cannot say the court would err in holding that the witness would not probably so testify if his depositions had been secured. Carver v. State, 36 Tex. Cr. R. 552, 38 S. W. 183, and subdivision 2 of section 643, White's Ann. Code of Criminal Procedure.

[3] The prosecutrix, Mary Hale, testified on the trial, in answer to questions:

"Q. What caused you to yield to him? A. Because I loved him, I reckon. Q. What did you say? A. Because I thought he loved me and would be true to me. Q. What, if anything, did the fact you were going to be married five days after that—state what effect did that have on you in allowing him to have intercourse with you? A. I thought he would be true to me. Q. Would you have yielded to him, but for the fact of his promise to marry you five days after that? A. No, sir."

Appellant insists that the court should have instructed the jury, under this testimony, that if the prosecutrix yielded her person to appellant partly through love for appellant he was entitled to be acquitted. He contends

that she must have yielded solely in reliance on the promise of marriage, and if her love for appellant was any part of her reasons for yielding it would not be seduction under our statute. We have frequently held that, if the act of intercourse took place in exchange for a promise of marriage, without evidence of association, love, and affection, it would be but a matter of barter and sale. Seduction necessarily implies that one has won the affection of the young lady and obtained her confidence. That he has done so would not, in and of itself, make a case of seduction, as there must have been an engagement to marry upon which she had a right to rely. But without love and affection there could hardly be a case of seduction. It is the fact that one has won the love and confidence of a young lady, and by reason of such facts under a promise of marriage, he brings about her undoing, that renders him criminally liable. The court, in approving the bill, says:

"The proposition asserted by appellant is that, if prosecutrix yielded her virtue to appellant partly because she loved him and partly because he promised to marry her, appellant would not be guilty of seduction. If this is the law, then it would be hard to imagine how a case of seduction would arise. As I understand the law of seduction, it was intended to punish a man who would first win the love and confidence of a girl, and then by promise of marriage induce her to have intercourse with him, and then fail or refuse to carry out his promise of marriage. Necessarily, the first step in the offense is to win the love of the injured female, because it is her love for the man who promises to marry her that gives her faith in such a promise and causes her to rely upon it, and inspires confidence in the maker of such promise and belief that he will carry it out."

The court has a correct conception of the law, and he did not err in refusing to charge the jury as requested.

[4] The next contention of appellant, as made by appellant in this court, is that the court erred in failing to apply the reasonable doubt to that paragraph of the charge of the court wherein his affirmative defense was presented. The record we have before us is not clear whether or not the court had or had not instructed the jury to give the appellant the benefit of a reasonable doubt on this issue. In approving the bill of exceptions the court inserted the paragraph on this issue in his qualification of the bill, and in it the reasonable doubt was applied to that, as well as all other issues. But, as appellant insisted this did not comport with the true facts, the court required the clerk to send us the original charge of the court, and in it we find the court thus instructed the jury on that issue:

"If you should find from the evidence that one Roebuck had carnal intercourse with Miss Mary Hale before the defendant had intercourse with her, if he did do so, or that the defendant had intercourse with her without a promise of marriage before he had intercourse with her under a promise of marriage, if he did, *or if you have a reasonable doubt thereof*, then in that event you need consider the case no further, but will acquit the defendant."

This clearly and succinctly applied the reasonable doubt to that issue and we cannot understand why appellant makes such contention, when the record discloses that the court so instructed at his request, and amended his charge in conformity with appellant's objection thereto.

The only other contention is that the evidence is insufficient to sustain the verdict. Both appellant and the prosecutrix testify to acts of intercourse. She testifies to a promise of marriage. This he denies. The prosecutrix, however, is corroborated on this issue by Mrs. Maud Purmenter and other witnesses.

The judgment is affirmed.

### On Motion for Rehearing.

The only question discussed in the application for a rehearing is the one relating to the motion for a continuance. One of counsel for appellant in his argument states:

"We cannot agree with the court that there was any duty of diligence incumbent on the defendant until after indictment."

If there is any expression in the original opinion indicating such holding, it was not intended. His duty as to diligence to get his witnesses began when he was arrested on the indictment. Appellant says there is no question as to diligence up to July 26th. To this we cannot agree. In the application for a continuance appellant states:

"Defendant shows that he has learned that the witness [Sherman Hale] moved from this county to Oklahoma in September, 1914, but *he did not know his residence at the time he had a subpœna issued to this county.*"

If appellant knew that Hale had left Coryell county at the time he had the subpœna issued to that county, even if he did not know his exact place of residence in Oklahoma, certainly causing a subpœna to issue would not be diligence, when he knew he had left the county nine months prior to the issuance of the subpœna, and gone to Oklahoma. The case would stand as if he had had no process issued, and no diligence used up to that time. It was his duty, instead of issuing a subpœna, to then make an effort to secure the depositions of the witness. However, the court did grant him a postponement of the case from July 26th to August 2d. The district attorney that day waived notice and service and copy of the interrogatories, and

184 S.W.—53

agreed that commission might issue at once, and commission did issue on that day. It then became the duty of appellant to see that the interrogatories were placed in the hands of an officer authorized to take the depositions.

Appellant insists that we should take judicial notice of the difficulty of securing an officer to take depositions of a witness in a sister state. If we should take such notice, then appellant must also be construed to be in possession of the same information, and yet he made no effort to see that the interrogatories reached the hands of an officer authorized to take depositions. He had seven days. Poteau, Okl., is not so distant but that the interrogatories could have been taken and returned in that time by diligence; at least, the duty to endeavor to do so was incumbent on him, and if he failed, after using due diligence, there would be merit in his contention. When this court was first organized it was held in Buie v. State, 1 Tex. App. 455:

"It has been repeatedly decided by this and the Supreme Court that it must be shown what was done with the process obtained for a witness; that it should be made to appear that it was placed in the *hands of the proper officer* if the witness resided in the county, and if he resided out of the county then that it was forwarded, and how and when, *to the proper officer there.*"

Appellant states in his application that when he had the subpœna issued to Coryell county he knew the witness had moved to Oklahoma. This was July 16th. For 10 days, or until July 26th, when the case was called for trial, he had made no effort to take the depositions of the witness. On this day the court granted a postponement until August 2d, that he might take the witness' depositions. The district attorney waived notice and time, and a commission was issued on that date, and the showing that appellant makes is that he mailed the depositions to the postmaster, with the request that the postmaster turn the depositions over to an officer, sending no money to pay for taking the depositions. The commission never reached the hands of an officer authorized to take the depositions. See Dove v. State, 36 Tex. Cr. R. 105, 35 S. W. 648, and a long list of authorities cited in subdivision 2, § 600, White's Ann. Code Cr. Proc.

The motion for rehearing is overruled.