## D. PORTER v. THE STATE.

### No. 4238.   Decided November 1, 1916.

**1.—Assault to Murder—Aggravated Assault—Depositions—Continuance—Want of Diligence.**

Where, upon trial of assault to murder and a conviction for aggravated assault, one of defendant's absent witnesses, for which he sought a continuance, lived in another State just across the line, to whom the defendant propounded interrogatories which were duly crossed by the State and sent them to a notary in said other State, this was not due diligence; besides, it did not appear that he provided for the payment of the officer for taking the depositions nor did the application show why said depositions were not taken and returned within time to be introduced on the trial.

**2.—Same—Depositions—Notary Public—Statutes Construed.**

Article 820, Code Criminal Procedure, does not authorize a notary public out of this State to take depositions of an absent witness residing in such State. Following Lienpo v. State, 28 Texas Crim. App., 179, and other cases.

**3.—Same—Continuance—Want of Diligence—Subpoena.**

Where defendant's application for a continuance showed that a subpoena was issued for an absent witness and returned not served, and defendant used no other diligence to secure the attendance of said witness, although he could easily have done so, there was no error in overruling his application. Following Giles v. State, 66 Texas Crim. Rep., 638, and other cases.

**4.—Same—Charge of Court—Practice on Appeal—Objections to Charge of Court.**

Where defendant objected to the court's charge, and the court changed his charge in several respects to meet some of the objections, and the bill of exceptions did not point out the objection to the court's action in what particular instance he did not correct or change his charge, there was no reversible error.

**5.—Same—Requested Charges—Bill of Exceptions.**

Where the bill of exceptions did not present or point out the questions embraced in the requested charges which the court refused, they can not be reviewed on appeal; besides, there was no error in refusing them. Following Byrd v. State, 69 Texas Crim. Rep., 35, and other cases.

**6.—Same—Evidence—Facts Showing Transaction.**

Upon trial of assault to murder and a conviction of aggravated assault, there was no error in introducing in evidence the acts and declarations of defendant and his companions which were a part of the whole transaction and led up to the assault.

**7.—Same—Evidence—Remarks by Court.**

Upon trial of assault to murder and a conviction for aggravated assault, there was no error in introducing testimony that the witnesses were looking for a constable who was the party assaulted, and the remarks of the trial judge with reference thereto which were addressed to counsel and not to the jury, and which were not on the weight of the evidence.

**8.—Same—Evidence—Declarations of Third Party.**

Upon trial of assault to murder and a conviction of aggravated assault, there was no error in permitting the assaulted party to testify as to what was told him about a lot of men on the road shooting a gun and automatic pistol, and requesting him as constable to go down there and stop them; to show why the constable went there and was assaulted by defendant.

**9.—Same—Evidence—Flight—Resisting Arrest.**

Upon trial of assault to murder and a conviction of aggravated assault, there was no error in admitting testimony why the officers responded to a call over the telephone to arrest defendant and his companions who had assaulted the constable, the party alleged to have been injured, and that the defendant and his companions were fleeing and resisted arrest when the officers overtook them; besides, this testimony was withdrawn by the court except as to the question of flight. Following Moreno v. State, 71 Texas Crim. Rep., 460, and other cases.

**10.—Same—Evidence—Warrant of Arrest.**

Where, upon trial of assault to murder and a conviction of aggravated assault, the evidence showed that defendant and his companions, after assaulting the constable, attempted to escape in hasty manner, there was no error in admitting testimony that other officers were notified of their attempted escape and the unlawful manner in which they conducted themselves, to show that the officers had neither time nor opportunity to procure a warrant of arrest for them.

**11.—Same—Evidence—Irrelevant Testimony.**

Upon trial of assault to murder and a conviction for aggravated assault, the proffered testimony by the defendant that he was charged with disturbing the peace, etc., had no legitimate bearing upon the trial of the instant case, there was no error in excluding it.

**12.—Same—Evidence—Impeaching Witness.**

Where a proper predicate had been laid, there was no error in permitting the State to introduce in evidence the written statement of one of the defendant's witnesses which contradicted some of his testimony on the trial.

**13.—Same—Evidence—Acts of Defendant—Shorthand Facts.**

Upon trial of assault to murder and a conviction of aggravated assault, there was no error in the cross-examination of one of defendant's witnesses, to have him testify that it looked to the witness that defendant was getting ready to shoot; besides, this testimony was withdrawn by the court.

Appeal from the District Court of Clay. Tried below before the Hon. Wm. W. Bonner.

Appeal from a conviction of aggravated assault; penalty, a fine of three hundred dollars and six months confinement in the county jail.

The opinion states the case.

*Wantland & Parrish,* for appellant.—On question of notary public: Blake v. State, 38 Texas Crim. Rep., 377.

On question of refusing continuance: Mason v. State, 57 Texas Crim. Rep., 319; Taylor v. State, 79 id., 274; Sharp v. State, 61 Texas Crim. Rep., 247.

On question of refusing requested charke: McPeak v. State, 80 Texas Crim. Rep., 187 S. W. Rep., 754.

On question of remarks by court: McMahan v. State, 61 Texas Crim. Rep., 489, 135 S. W. Rep., 558; Caruth v. State, 77 Texas Crim. Rep., 150; Scott v. State, 72 id., 26; Deary v. State, 62 id., 352; Moore v. State, 33 id., 306; Simmons v. State, 55 id., 441.

On question of other transactions: McPeak v. State, supra; Hodges v. State, 73 Texas Crim. Rep., 378; Roquemore v. State. 59 id., 568; Black v. State, recently decided.

On question of conclusion of witness: Bell v. State, 48 Texas Crim. Rep., 20, 87 S. W. Rep., 1160.

*C. C. McDonald,* Assistant Attorney General, for the State.—On question of requested charge: Earles v. State, 52 Texas Crim. Rep., 140.

On question of arrest without warrant: Jacobs v. State, 28 Texas Crim. App., 79; Ricen v. State, 63 Texas Crim. Rep., 189; Miller v. State, 32 Texas Crim. Rep., 319; Hull v. State, 50 id., 607; Garner v. State, 50 id., 364; Morawietz v. State, 46 id., 436.

On question of flight: Taylor v. State, 49 Texas Crim. Rep., 7, and cases cited in opinion.

On question of shorthand rendering of facts: Graham v. State, 28 Texas Crim. App., 582; McCormick v. State, 52 Texas Crim. Rep., 493; Clark v. State, 56 id., 293; Richardson v. State, 70 id., 419; Meyers v. State, 37 id., 208; Branch, Crim. Law, sec. 347.

PRENDERGAST, PRESIDING JUDGE.—Appellant was indicted for an assault with intent to murder John Firestone, a constable of said county. Upon a trial he was convicted of an aggravated assault. The indictment, by inclusion, embraced aggravated assault on several phases.

The offense was alleged to have been committed May 26, 1916. He was arrested and placed in jail on that date. The indictment was filed June 1st, and he was the next day served with a copy. He did not make bond from the time of the arrest until after his conviction. He was confined in the jail all this time. His trial was set for June 5th, and began that day and consumed that and the following two days. With proper diligence appellant propounded interrogatories to John

Reed, a witness who was a resident of Oklahoma. The district attorney promptly crossed, waived time, and appellant procured a commission on June 3d to the proper officers in Oklahoma to take the depositions. It may be conceded from his allegations that the testimony of Reed was material to him on some points. Our statute (art. 820, C. C. P.) prescribes that the "depositions of a witness residing out of the State may be taken before the judge or chancellor of a supreme court of law or equity, or before a commissioner of deeds and depositions for this State who resides within the State where the deposition is to be taken." It does not authorize a notary public in such other State to take depositions, as has been repeatedly held by this court. Lienpo v. State, 28 Texas Crim. App., 179; Murrell v. State, 184 S. W. Rep., 831, and cases therein cited. His application alleges that they sent the commission and interrogatories to a certain notary public in Oklahoma with instructions to him to have the witness to come before him and give his depositions. It nowhere alleges that he provided for the payment of any officer of his fees for taking the depositions. Nor does he allege or in any way show why said depositions were not taken and returned within the time so that they could have been introduced. We know, judicially, that Clay County adjoins Oklahoma, only a short distance from Henrietta, the county seat of Clay County, and all of the testimony shows that this witness lived but a short distance in Oklahoma from Clay County.

His other witness was Ivan Boyd, who lived in Montague County, in about a mile of Ringgold, just a short distance across the Clay County line. Within proper time he had a subpoena issued for him, as well as for some other witnesses, among them, his father, with whom he lived. His father and other witnesses were subpoenaed, and they appeared and were present on the morning when the case was called for trial, his father having come from his home to Henrietta that morning. His son Ivan, the witness, had left home and was absent therefrom at the time his father was subpoenaed, and he was not served. However, the testimony shows that Ivan Boyd returned to his home after a short absence and was there pending this trial, his father at appellant's instance testifying during the trial that Ivan had returned to his home the night before he was testifying and was there when he got up that morning. It is evident that his father, appellant's witness, went back and forth to his home from Henrietta and stayed at home at night, returning to the court each morning. Appellant did not procure any other subpoena after the one was returned showing that Ivan Boyd had not been served and used no other diligence or means whatever to have Ivan to attend the trial. If appellant had used any reasonable diligence to have said Ivan attend as a witness, he could unquestionably, as this record shows, have secured his attendance.

Under the circumstances of this case and as shown by the record, appellant used no such diligence to get the testimony of either of his absent witnesses as to entitle him to a continuance. In other words,

it shows such a lack of diligence as would entitle him neither to a continuance nor to a new trial because he did not get said witnesses. We have had occasion to fully discuss this question and cite and quote from the authorities in Giles v. State, 66 Texas Crim. Rep., 638, 642-4, and Murrell v. State, supra. So that the court committed no reversible error in refusing his original application for a continuance, nor the renewal thereof, nor in refusing him a new trial on that ground.

Appellant has a large number of bills of exceptions. It is unnecessary to state or discuss them separately. Several present the same character of question.

He filed a large number of exceptions to the court's charge. He took one bill, embracing all these matters therein. It is perfectly evident from the record that the court changed his charge in at least several respects and gave some of his special charges to meet some of his objections. The only way to properly present such questions for review by this court under such circumstances is to take a separate bill to the court's action in the particular instance wherein he does not correct or change his charge to meet the objection and not to embrace the whole thing in one bill.

He requested eight special charges. The court gave two of them just as asked. Three others were to matters pertaining solely to the charge of an assault to murder. As appellant was acquitted of this offense, all such questions pass out, as has uniformly been held. Neither of his others should have been given. However, neither of them is presented in such a way as to authorize or require this court to review them. His bill to each in substance and effect states that in the proper time he presented his said charge and asked that it be given, quoting the charge, and that the court refused to give it, to which he excepted. It has been the uniform holding of this court that in such instances, even in felony cases, and much more so in misdemeanor cases or convictions, such a bill does not present the questions so as to authorize or require this court to review it. Byrd v. State, 69 Texas Crim. Rep., 35; Ryan v. State, 64 Texas Crim. Rep., 628, and a great number of earlier cases cited in these decisions and other cases subsequently decided.

Briefly stated, the evidence shows that appellant and three companions, he and two of whom at least, lived in Oklahoma, went therefrom to Wichita Falls in an automobile and stayed there one night and about half the next day, when they started to return in the same way. Their route was from Wichita Falls through Henrietta and thence easterly to Oklahoma. That they all were drinking. Appellant and at least one of the others were drunk. They had a Winchester rifle and a pistol with them. Soon after leaving Wichita Falls they ran the automobile at an excessive speed, several witnesses testifying that they ran it part of the way as fast as that make of machine, the Ford, could possibly run, twenty-five to thirty-five miles an hour, appellant himself testifying that part of the time they ran it "awful" fast. That along the road they shot the gun while they were running. That on one or two

occasions they stopped and shot it while they were traveling along the road, and that in the town of Jolley, through which they had to pass, they shot the gun at least twice while they were in this town. That after leaving Jolley one of the State's witnesses, who was traveling behind them in his automobile, testified in substance that as he approached appellant and his companions he saw appellant and one of the others out on the ground coming back the road, their automobile having stopped, and the other two remaining in it. The witness stopped his automobile also, and while thus stopped, an utter stranger to him, and it seems to the appellant and his companion too, jumped up on his running board and demanded that the witness should take him on, which he refused. That while this was going on, appellant and his companion came up on him, demanded that he give them their pistol, and upon his failure or refusal to do so, they took it away from him. It seems it appeared to this witness that they were forcibly taking a pistol away from this stranger, and he, the witness, did not know to whom it belonged, it appearing to him that they were forcibly taking it away from this party. It developed on this trial that appellant or some one of his companions in running their automobile had dropped a pistol, and that they stopped their machine and went back to hunt for it, with the result stated. The State's witness, as stated, did not know this at the time. John Firestone was the constable and lived near the road where these parties were traveling and these transactions occurring. This witness, who had seen as appeared to him the robbery of this stranger by appellant and his companion of the pistol, went ahead of them, reached Firestone's residence, where he was, and told him that appellant and his crowd were a bunch of drunks; that they had taken a sixshooter from a party and had a Winchester, and in effect called upon the constable to act in the premises. The constable immediately took his pistol, got in an automobile and rode down to the road where these parties would soon pass, with the intention of stopping and arresting them. The testimony, without dispute, shows that he had no time or opportunity to procure any warrant for their arrest, and that he had to act immediately. He was several miles from Henrietta. There was no justice of the peace nearer than Henrietta, nor any other means whereby he could have procured a warrant. It is certain that if he had not acted immediately the parties would have entirely escaped and gone into Oklahoma before he could have possibly overtaken them or procured a warrant. He reached the road these parties were running on before they got there, when he got out in the road, waved his pistol back and forth in his hand, and notified them that he was an officer, and demanded that they should stop; instead they speeded the faster, but after running two or three hundred yards further, they did stop, and he started up towards them afoot, and appellant jumped out of his automobile, took the Winchester, ran back towards Firestone, and when not far distant from him, the State's evidence shows, that he threw his Winchester down on Firestone, point-

ing it directly at him, and demanded that he thrown down his pistol and throw up his hands. That Firestone at the time again reiterated to appellant that he was an officer, as he had stated to them when he had attempted to stop them in the road just before this. That appellant did force the constable to lay his pistol down on the ground, move away from it, hold up his hands, and he had to remain in this condition until appellant reached the pistol, picked it up and with his gun marched the constable down to where his car was. The assault in this instance is charged to have been committed at the time he leveled his gun upon the constable, forced him to lay his pistol down, move away from it and hold up his hands. Whether the constable, when he first attempted to stop these parties in the road, told them that he was an officer or not, was a disputed point by the testimony. Also whether or not the constable so told appellant when he leveled his gun upon him, made him lay aside his pistol and hold up his hands, was disputed by the testimony, the State's side showing that in both instances at the specified times the constable did notify them of his official position. When appellant marched the constable back to his car, the constable again told the crowd who he was, and the other companions of appellant then made him deliver the constable's pistol back to him, but before he would do so he unloaded it, kept all the cartridges and passed it back to him through one of the other parties. They thereupon jumped into their automobile, left running very fast, and attempted to escape. The constable, it seems, went back up to his residence, near where these things took place, told his wife, or some others, to communicate with the officers at Henrietta what had occurred and that the defendant and his companions were attempting to escape and to stop and arrest them, telling them substantially what had occurred, from which the parties making the communication and the officers at Henrietta receiving the communication believed, and acted upon such belief, that these parties had committed these crimes and were attempting to escape. Appellant and his companions stated, as shown, that when they left Firestone they ran their machine "awful" fast, trying to escape. That their route would take them through Henrietta, but fearing they would be arrested if they attempted to go through Henrietta, they took another road so as to avoid going through Henrietta and attempted to escape into Oklahoma without being arrested at all. Firestone, it seems, as soon as he could, procured an automobile and took after appellant and his crowd, but he lost so much time and was so far behind that he did not catch up with them. The officers at Henrietta, as soon as communicated with, armed themselves, procured an automobile and went on the road towards Wichita Falls, expecting to meet and arrest appellant and his crowd. They did not know them, however, and after running out a few miles did meet them, the appellant and his crowd running with great speed, as stated. Immediately after they met, the sheriff's automobile was stopped and another big, powerful machine belonging to Mr. Boyd came along, and Mr. Boyd,

who had been following these parties, told the officers that the persons they had just met were the persons they were after. The officers then got in this big, powerful machine and took after appellant and his crowd. In attempting to avoid going through Henrietta on the road that they took, which appellant said he knew and by going it they would avoid Henrietta, they had to go through a gate, and to do this they had to stop the car, run it in, stop it again and close the gate. That appellant himself got out with his Winchester in his hand, opened the gate and had just closed it as these officers ran up. They immediately demanded that appellant and his crowd should halt, hold up their hands and surrender. Two of appellant's companions promptly got out of the machine, did hold up their hands and surrender. Appellant, however, retreated to the machine, and as the officers testified, attempted to shoot them with his Winchester, but his gun hung fire and would not shoot, and that they again fled some several miles before they could be overtaken again by the officers, and that just before the officers overtook them, they concluded that they had better go back and surrender. They stopped the car, and as the officers again caught up with them, they got out, held up their hands and surrendered. We have merely given a general outline of what the evidence was sufficient to show, deeming it unnecessary to detail it. There were conflicts in the testimony on some material points.

Appellant has some bills objecting to the testimony of the witnesses following him in their automobiles as to the acts of appellant along the road leading up to the very alleged assault herein, such as that they were drunk, drinking, shooting along the road and in the town of Jolley, the rate of speed and the way they were running their machine, also what appellant's companions shouted to him when he took his Winchester and ran back towards Firestone, making him hold up his hands and marching him back, wherein they shouted to him to shoot him, kill him, and such matters, and also the condition of appellant's gun at the time, and that he was attempting to work it so as to shoot Firestone. We think all this testimony was admissible. It was a part of the whole transaction. The jury could not have understood the situation and properly passed upon the questions without it.

Appellant has another bill, wherein it is shown that he objected to the State's witness Rountree telling that when he was hunting for the constable he met Pat Firestone, a brother of John, the constable, and that he asked him if he was a constable. That his attorney thereupon objected and was arguing that this one expression of the witness was inadmissible and that the court, in passing on the question, said to him: "I don't think that the constable at that time would have had to determine whether they were guilty of a felony or a misdemeanor, or which had been committed." This, as explained by the court, was a remark made to appellant's counsel in his debating that question of law. The remark, while in the hearing of the jury, was not to the jury at all, as shown. We think it no such comment as would authorize

or justify a reversal of this case, even if it should be held to have been improper.

There was no error in the court's permitting the witness John Firestone to tell that when Rountree came up to get him that he told him there was a bunch on the road with a gun and an automatic pistol, and for him to go down and stop them, telling him which one had the gun, and that he had seen him take the pistol away from another man on the road, and that the constable replied he would go down, and did go down, the court stating that he would permit him to say why he went down there.

Appellant by other bills shows that he objected to the testimony by the officers from Henrietta who responded to the call to arrest him and his bunch, which shows their flight and resistance of arrest when these officers came upon them at the gate and demanded their surrender, announcing that they were officers. The court at the time admitted this evidence, as stated by him, to show flight and resistance of arrest if it did and restricted the jury to its consideration for that purpose only. This testimony undoubtedly tends to show both flight to avoid and prevent arrest, and resistance of arrest, at the time. Flight, or attempted flight, may always be shown as a criminating circumstance. Sec. 135, 1 Branch's P. C., p. 78, and authorities there collated. Also it may always be shown that when an accused is arrested, or sought to be arrested, for an offense, he resists it. Mitchell v. State, 52 Texas Crim. Rep., 37; Moreno v. State, 71 Texas Crim. Rep., 460; 2 Jones on Ev., sec. 287. So that we think all this testimony was admissible on these points. However, the court later gave appellant's specially requested charge, instructing the jury peremptorily that they could not consider any of said evidence for any purpose except to show flight, if it did, and that they could consider it for no other purpose whatever.

Neither did the court err in permitting the officers at Henrietta to tell that they were communicated with, and by whom, telling them in substance of the said acts of appellant and his crowd, and that they acted thereon and immediately proceeded to undertake to arrest them. The evidence unquestionably shows that they had neither time nor opportunity to procure any warrant for any of them; and as stated, if they had not acted as promptly as they did, the appellant and his crowd would have entirely escaped, which they were undertaking to do, running their machine in the most reckless and rapid manner and avoided going through Henrietta for the very purpose, as they stated, to prevent and avoid being arrested.

Neither did the court err in refusing to permit the county attorney to testify at appellant's instance that appellant had been charged with drunkenness, disturbing the peace, resisting the officer, Cunningham, aggravated assault on Firestone and aggravated assault on Cunningham, all these persons being the officers who attempted to arrest him, and that said charges grew out of the facts and circumstances testified

to by the various witnesses on this trial, though we can not see where the State should have objected to this testimony. It occurs to us that it would clearly have been against appellant and not in his favor, but at any rate it had no legitimate bearing upon the trial of appellant in this cause.

Neither did the court err in permitting the State to introduce the written statement of the witness Eckman, which contradicted some of his testimony on this trial. The court admitted it, as he stated, for impeachment purposes of this witness, the proper predicate having been laid.

Neither did the court err in permitting the State to have Brown, appellant's witness, on cross-examination, to tell in substance that it looked to him like when appellant was running back with the gun that he was getting ready to shoot. Even if this testimony had not been admissible, it was clearly excluded by the court's charge given at appellant's instance, which we have just mentioned above.

We think no reversible error has been pointed out in the trial of this case. The judgment will, therefore, be affirmed.

*Affirmed.*