## MELVIN OWEN v. THE STATE.

### No. 7054.   Decided November 8, 1922.

### Rehearing Denied December 20, 1922.

**1.—Murder—Manslaughter—Continuance—Want of Diligence.**

Where, upon trial of murder and a conviction of manslaughter, the record on appeal showed want of diligence in the application for continuance, there was no error in overruling same. In the absence of an averment in the motion for continuance, furnishing a satisfactory excuse for the failure to make earlier application for the process of witnesses, the same is insufficient, and the defendant cannot rely upon the clerk's promise to issue process. Following Brown v. State, 32 Texas Crim. Rep., 119, and other cases; besides, if the diligence had been sufficient, there was no reversible error.

**2.—Same—Circumstantial Evidence—Charge of Court—Corpus Delicti.**

Where complaint was made of the failure of the court to instruct on the law of circumstantial evidence, the position taken being that it was only by circumstantial evidence that the use of a certain singletree was proved, held: that the contention is not tenable under the facts, as the *corpus delicti* was proved by direct testimony.

**3.—Same—Rehearing—Self-Defense—Continuance—Affidavit.**

Where appellant contended error in the lower court's action in overruling his application for continuance, under the hypothesis that appellant could have proved self-defense by the absent witness, but the evidence did not raise the issue of self-defense, there was no error in overruling his application; besides, the motion for new trial did not show any affidavit by the absent witness that he would have testified as alleged.

**4.—Same—Circumstantial Evidence—Charge of Court—Use of Singletree.**

Where the alleged singletree was found not far from the body of deceased, and showed evidence of blood, etc., and the testimony showed that deceased came to his death by blows inflicted upon his head, the fact that no one saw defendant use the singletree and that the blows were inflicted principally by the butt of the gun, would not call for a charge on circumstantial evidence in the instant case.

Appeal from the District Court of Navarro. Tried below before the Honorable Hawkins Scarborough.

Appeal from a conviction of manslaughter; penalty, three years imprisonment in the penitentiary.

The opinion states the case.

*Gibson & Lovett, Upchurch & Howell,* and *John B. Davis,* for appellant.

*R. G. Storey,* Assistant Attorney General, *W. A. Tarver,* County Attorney, *Callicutt & Johnson,* for the State.

MORROW, Presiding Judge.—Under an indictment for murder, the appellant was convicted of manslaughter and punishment fixed at confinement in the penitentiary for a period of three years.

That the appellant killed the deceased Washington is not controverted. A few days before the homicide, a difficulty took place between the wife of the appellant and the wife of the deceased. The wife of appellant received some severe injuries. The evidence is conflicting touching the episode, but according to appellant's version, when he sought to interfere, he was attacked by the deceased, who had a shotgun in his hand; that appellant fled and was fired upon. Subsequently, the appellant saw the deceased in possession of a shotgun and was also informed that he had one and that he had made threats to kill the appellant on sight.

According to the appellant, while he was driving his team and he and his stepson, Nathaniel Drake, were riding in a wagon, they met the deceased, who was also in a wagon, driving his team. The deceased was armed with a shotgun and fired twice at the appellant, who, as soon as possible, drew his pistol and returned the fire, shooting one time. Both of the teams became frightened, and that of the deceased circled and turned in the same direction that the appellant was driving, and at a turn in the road deceased fell or jumped out of his wagon, still having possession of the gun. The appellant, fearing that deceased would shoot him as he passed, jumped out of his wagon, took the gun from the deceased and struck him with it. Quoting him, he said:

"I don't know how close I jumped out to him, but I jumped out right by him; my team was running and Nathaniel was driving; I was in the wagon with my pistol in my hand, and Young was on the ground, and instead of driving on, I jumped out when I got there to him and grabbed his gun and then took his gun and beat him with it. Then Nathaniel had come up, and we walked on off, 10 or 12 steps and I looked back and Young was crawling on his all-fours. . . . Nathaniel had the gun then, and I got it and we both went back down there where Young was. I did not have my pistol then, Nathaniel had the gun and the pistol, and I took the shotgun and we both went to the body. I did not take the shotgun and proceed to beat his brains out; I never beat his brains out. I took the gun barrel in my hands and beat him in the head with the stock. He was not doing anything when I left him. I went to Mr. Alf. Bills then and reported to him that I had killed the son-of-a-bitch."

The parties were negroes, and the homicide took place near the home of Mr. Bills, a white man. Standing in his cornfield nearby, there was a plow from which after the homicide, the singletree was

missing. , This was found near the deceased with blood upon it. There was blood upon the ground in several places near where the body of the deceased was found, ranging a distance from ten to fifteen feet. The singletree, after the homicide, was found near the body. The difficulty occurred early in the morning. Mr. Bills had not gotten out of bed. He heard two shots, sounding just alike, apparently fired from a rifle or pistol. He arose from his bed and saw the deceased standing in his wagon and driving his team at a rapid pace, followed by the wagon of the appellant, in which were the appellant and Nathaniel Drake. The third shot was fired from behind Washington. Something happened to Washington as he reached the bend of the road. He either got out or fell out of the wagon and was upon the ground, and the appellant was approaching him on foot, about forty or fifty feet distant. Washington was on all-fours, and appeared to be trying to rise. Nathaniel Drake was also out of the wagon and the witness could not discern what the appellant had in his hands. The witness, fearing that he might be shot, retreated to the barn. A few moments later, appellant came to him and said "to 'phone for the law; that he had killed the son-of-a-bitch; that the deceased had shot at him a day or two before, and again that morning; and that he (the appellant) had killed the deceased with his own gun."

Another witness heard the report of two shots, both sounding alike and apparently fired from a pistol. Some moments later, he observed the appellant and Nathaniel Drake, and also observed the deceased, who was on the ground, apparently trying to get up. Appellant and Drake were about sixty or seventy steps away from the deceased and Drake had a gun in his hand. He (Drake) turned around and said: "Don't you get up, you son-of-a-bitch, I will come back and kill you." Appellant looked around and said: "Let me have the gun, I will go back and kill the son-of-a-bitch." Drake gave him the gun and they both went back. Washington was not doing anything, and appellant struck him several times with his gun, holding the barrel and striking him with the stock. The witness saw him strike three times.

The evidence showed that the deceased had a number of wounds upon him, some of them crushing his skull, and that they appeared to have been made by some blunt instrument.

The indictment was returned October 12, 1921. The trial took place January 23, 1922. A motion for a continuance was made. On December 12th, the case was continued or postponed upon the motion of the appellant because of the sickness of his wife. The second motion for a continuance, filed on the 23rd of January, was overruled. The absent witness Smith, according to the averments in the application, would have corroborated appellant's testimony to the effect that Smith had told the appellant on the day before the homicide that the deceased had threatened to kill him on sight. It appears that the first process applied for to secure the testimony of Smith was on the 13th day of January, 1922, about ten days before the

trial, and about three months after the indictment was filed and appellant arrested. The appellant relied upon the clerk to issue the subpoena and mail it to the Sheriff of Hardeman County. This, it seems, the clerk failed to do. The first inquiry made of the clerk upon the subject seems to have been on the 23rd day of January, the day the case was called for trial. The clerk informed the appellant at the time that the process had been issued and mailed. It later developed that the clerk was mistaken; that he had neither issued nor mailed it. In the absence of an averment in the motion for a continuance furnishing a satisfactory excuse for the failure to make earlier application for the process, the law's demand for diligence was not satisfied, nor was it sufficient to rely upon the clerk's promise to issue the process. Brown v. State, 32 Texas Crim. Rep., 119; Dean v. State, 29 S. W. Rep., 477; Washington v. State, 35 Texas Crim. Rep., 154; Bosley v. State, 69 Texas Crim. Rep., 100, 153 S. W. Rep., 878; Furnace v. State, 79 Texas Crim. Rep., 59, 182 S. W. Rep., 454; Wyatt v. State, 80 Texas Crim. Rep., 281, 190 S. W. Rep., 153; Marta v. State, 81 Texas Crim. Rep. 135, 193 S. W. Rep. 323; Payne v. State, 84 Texas Crim. Rep., 2; McClendon v. State, 84 Texas Crim. Rep., 259; Ice v. State, 84 Texas Crim. Rep., 509; Albertson v. State, 84 Texas Crim. Rep., 574; Morse v. State, 85 Texas Crim. Rep., 83; Stracner v. State, 86 Texas Crim. Rep., 89; Armstrong v. State, 88 Texas Crim. Rep., 433, 227 S. W. Rep., 487; Moore v. State, 89 Texas Crim. Rep., 87, 229 S. W. Rep. 509; Morse v. State, 85 Texas Crim. Rep., 83, 210 S. W. Rep., 965; Williams v. State, 10 Texas Crim. App., 114; Hailes v. State, 10 Texas Crim. App., 490; Giles v. State, 148 S. W. Rep., 317; Price v. State, 53 Texas Crim. Rep., 428; Dove v. State, 36 Texas Crim. Rep., 107; Porter v. State, 80 Texas Crim. Rep., 240, 190 S. W. Rep., 159; Vernon's Texas Crim. Stat., vol. 2, p. 311; White's Ann. Code of Crim. Proc., Sec. 501.

Even if diligence were sufficient, taking into account the verdict rendered, we would not feel that a reversal was warranted. The testimony of the absent witness was relevant to the issue of self-defense. The testimony shows that after the deceased had been struck and wounded and was on the ground apparently trying to get up, and after appellant and Drake had traveled a number of yards distant and were entirely out of danger from the deceased, and were in possession of the gun as well as the pistol, they decided to go back and kill him, and did go back and strike him several times with the butt of the shotgun and produced his death.

The appellant had no right to expect a verdict more favorable than manslaughter. The indictment charged that the appellant killed the deceased by beating him with a gun and singletree. The court instructed the jury in accord with this averment. Complaint is made of the failure of the court to instruct on the law of circumstantial evidence, the position taken being that it was only by circumstantial evidence that the use of the singletree was proved. We do not regard

the complaint meritorious. It was proved by direct testimony, even by the testimony of the appellant himself, that he killed the deceased by beating him. There were circumstances indicating that some of the blows were struck with the singletree. The corpus delicti was proved by direct testimony. We understand that the law requires a charge on circumstantial evidence only in those cases in which the State relies for a conviction upon circumstantial evidence alone. Post v. State, 10 Texas Crim. App., 598; Cyc. of Law & Proc., Vol. 12, p. 633, par. 14; Thompson v. State, 33 Texas Crim. Rep., 217; Hardin v. State, 8 Texas Crim. App., 653; Jackson v. State, 62 S. W. Rep., 914; Upchurch v. State, 39 S. W. Rep., 371; Beason v. State, 43 Texas Crim. Rep. 442; Lindley v. State, 8 Texas Crim. App., 445. We think the evidence warranted the State's counsel, to argue that one of the weapons used in killing the deceased was a single-tree.

Discerning no error in the record, the judgment is affirmed.

*Affirmed.*

ON REHEARING

December 20, 1922.

LATTIMORE, JUDGE.—Apellant bases his request for a rehearing upon only two grounds, which are, first, that if it be conceded that diligence was shown to secure the presence at the trial of a witness by the name of Smith for whom a continuance was asked, that a new trial should have been granted upon the proposition that the testimony of Smith was shown to have been material upon the trial; second, that this court erred in upholding the action of the trial court in refusing to charge the law of circumstantial evidence as applicable to the theory that deceased was killed with a singletree.

In the original opinion this court asserted that no diligence appeared to secure the presence of the witness Smith. The only fact appearing in the record that would tend to make the testimony of said witness at all material was the statement of appellant that Smith had told him that deceased had threatened to lay for him with a gun, and that Smith said deceased might also have a pistol. The statement of facts seems to place it beyond dispute that when deceased fell or was thrown from his wagon just prior to the homicide, appellant and his companion went up to him and beat him over the head with the gun of deceased which they had secured, and that a short time after and when they had gone a little distance from deceased, they looked back and saw him trying to get up on his hands and knees and that they then went back to him again and beat him in the head with the stock of said gun, after which last assault no one saw deceased move. There seems absolutely nothing in these facts upon which any self-defense, based upon the hypothesis that appellant had been told that deceased might have a pistol, could be predicated. We further observe that

ample time appears between the conviction of appellant and the over-. ruling of his motion for a new trial for the affidavit of witness Smith to have been procured, if in fact he would testify as stated in the application for continuance. No such affidavit was made a part of the motion for new trial.

Upon the proposition that the court ought to have charged on circumstantial evidence based on testimony that a singletree was found not far from the body of deceased upon which some of the witnesses thought they saw blood, we observe that the record is so replete with direct testimony of the fact that appellant struck deceased upon the head with the butt of his gun and that at the time said blows were inflicted deceased was struggling to his feet, and that afterwards he lay still and was apparently dead, that the fact that a bloody singletree was found not far from his body and that no one saw appellant of his companion use a singletree, would not be deemed a fact of such importance as to call for a charge on circumstantial evidence as applied to the theory of death resulting from the use of said singletree.

Being unable to agree with appellant upon either of the propositions contained in said motion, same will be overruled.

*Overruled.*