## 9859

## STATE v. TEAL.

(95 S. E. 69.)

1. CRIMINAL LAW—APPEAL—HARMLESS ERROR—FINDINGS—CORROBORA-TION—REVERSAL.—Where the Court submitted a seduction case to the jury and there was corroborating evidence, it would be idle to reverse because the Court did not expressly hold that there was corroborating evidence, as the submission of the issue to the jury was an implied holding that there was corroborating evidence.

2. CRIMINAL LAW—CONFESSION—DURESS—EVIDENCE.—In a seduction case, evidence *held* to show that a confession made by defendant to the seduced girl's father and brothers was voluntary and not under duress.

3. CRIMINAL LAW—OPINIONS—TESTIFYING AS TO MENTAL CONDITION.—A father was competent to testify in a seduction case that his sons were not angry, but were flustrated, and that defendant, in making a confession to them, was not terrified, but was penitent.

4. CRIMINAL LAW—CORROBORATION—PROFERT OF CHILD.—In a seduction case, it was proper to offer a child in evidence to corroborate the testimony of prosecutrix that she had been seduced.

5. CRIMINAL LAW—CORROBORATION—SIGNATURE OF DEFENDANT.—It was proper to admit the signature of defendant on his appearance bond to show the genuineness of letters of defendant used as corroborating evidence.

6. SEDUCTION—PROMISE OF MARRIAGE—CORROBORATION — SUFFICIENCY OF EVIDENCE.—Evidence *held* sufficiently corroborated to warrant a conviction of seduction under a promise of marriage.

7. CRIMINAL LAW.—CORROBORATION—WHAT IS.—A confession, birth of a child, and defendant's letters are proper evidence to corroborate prosecutrix in a seduction case.

8. SEDUCTION — WHAT CONSTITUTES OFFENSE. — Sexual intercourse which came about by the artifice of the defendant upon his promise to marry a woman constituted seduction.

9. SEDUCTION—PROMISE TO MARRY ON CONDITION.—Where a girl consents to sexual intercourse on the condition that the man will marry her if she becomes pregnant, the promise will not support a prosecution for seduction.

10. SEDUCTION—PROMISE TO MARRY—DATE.—To support a prosecution for seduction under a promise of marriage, the date of the marriage need not be set.

11. SEDUCTION—LEWD AND HABITUAL ACTS.—Where a chaste girl had intercourse under a promise of marriage, the seduction was com-

plete, and it is no defense that she abandoned herself freely, lewdly, and habitually to the will and lust of her seducer after she found she had been betrayed.

12. CRIMINAL LAW—INSTRUCTIONS—CHARGING ON THE FACTS.—A statement at the end of a charge, "If the defendant is not guilty, then you should not convict him. But if he is guilty, why not convict him?"—did not suggest to the jury to find against the testimony.

13. CRIMINAL LAW—SENTENCE—CRUEL AND UNUSUAL PUNISHMENT.— A sentence of three years imprisonment for seduction of an innocent and chaste country girl was not a cruel and unusual punishment.

14. CRIMINAL LAW—SUSPENSION OF SENTENCE—CONDITIONS.—Under act Feb. 15, 1912 (27 St. at Large, p. 773), providing that Circuit Judges shall have the power and authority, in their discretion, to suspend sentences imposed by them, upon such terms and upon such conditions as in their judgment may be fit and proper, the Court had the power to suspend part of a sentence of imprisonment in a seduction case on condition that defendant pay a specified amount toward the support of a child of the seduced girl.

15. CRIMINAL LAW—SENTENCES—FINES AND PENALTIES.—Where under act Feb. 15, 1912 (27 St. at Large, p. 773), the Court in a seduction case suspends part of a sentence on condition that defendant support a child, such condition is not a fine or penalty, because defendant can elect to serve his term.

Before SMITH, J., Greenville, Spring term, 1917. Affirmed.

W. A. Teal was convicted of seduction, and he appeals.

The following is the Judge's charge:

Mr. Foreman and gentlemen of the jury, at the time and place and in the manner therein described the defendant at the bar is charged in this bill of indictment with the statutory crime of seduction. This crime did not exist under the English common law, which was made the basis of our system of jurisprudence in every State of the Union except the State of Louisiana, but it was made a crime under an early English statute and it has been generally made a crime throughout this country.

First, in determining what elements enter into the offense it is necessary to consult the enactment which relates to the

offense. So far as applicable to this case it is made a misdemeanor by express enactment of the General Assembly of this State, passed in the year 1905, for a male person over the age of sixteen years by any means or deception and promise of marriage to seduce any unmarried woman; provided, no conviction can be had of any person so charged upon the uncorroborated testimony of the woman upon whom the seduction is charged; and provided, further, that no conviction can be had if it be proved on the trial of the case that at the time of the alleged offense or seduction that the woman upon whom it is alleged was lewd or unchaste.

To this indictment the defendant has entered a plea of not guilty, and under our system of law his innocence is presumed; that presumption remains with him in the course of the trial and entitles him to an acquittal at every stage of the trial until it has been removed by testimony which shall satisfy the jury beyond all reasonable doubt as to his guilt.

Under the fundamental law and policy of this State, which is constructed upon the principles of English liberty, no man is called upon to establish his innocence in a criminal case. He, therefore, has the right to remain silent and require that his guilt be established by the State charging him beyond a reasonable doubt before he can be convicted with a penalty of any kind for a public wrong. You must, therefore, not in this case, as one of the distinguished counsel for the State has stated, draw any inference hostile to the accused because he did not take the stand and testify in his own behalf. It is also a principle of criminal jurisprudence that no statement, or admission, or confession is to be taken against one on trial for a criminal charge unless the same is freely and voluntarily made; that is to say, made without duress, threats, inducements, or anything surrounding him at the time which would disturb the voluntary and free character of his utterance. Under the practice in this State the preliminary question as to the competency of such testimony is addressed to the Court, but the jury have the right, and it is

error not to accord them that right, to hear every word of testimony which is presented to the Court in passing upon that question, and even though the Court rules that such testimony is competent it is entirely within the province of the jury on that testimony or anything which may appear in the case bearing upon the question to conclude that such statement was not freely and voluntarily made, and if so, they must disregard every consideration of it. If they conclude, however, that a statement offered in evidence as one of the accused's was freely and voluntarily made, it is still their province and their province alone to accord to it that weight to which they deem it entitled, but they are not required to consider it at all even under those circumstances, but just as they view it and the weight which they conclude should be given to it. In other words, the credibility of the witnesses who testify in the case is solely for the determination of the jury, and they are to give to the testimony in any cause that weight to which they deem it is entitled.

The Court will now endeavor to give you an analysis so far as it is pertinent to the issues involved in this case of the section of the Criminal Code under which this indictment is preferred.

First. In order to obtain a conviction it is necessary for the State to establish beyond a reasonable doubt that the party charged is a male person over the age of sixteen years.

Second. That the woman upon whom the seduction is charged was at the time an unmarried woman.

Third. A promise of marriage. The promise of marriage need not be shown by any particular form of words. It is entirely sufficient if the language used by the accused was such as to imply the promise and it was so understood and accepted by the woman. If the jury can infer beyond all reasonable doubt from the facts and circumstances disclosed by the testimony that such language was used to the woman as indicating the intent and purpose and promise of the accused to marry her and it was so accepted and understood

by her, that is sufficient. The promise of marriage need not be made at the time of the alleged seduction, it may have been made before that time. It is only necessary that it should be the inducing cause of the intercourse referred to— that it sustains to the accomplishment of result the relation of cause to effect; that the woman relied upon it and was induced by it to part with her virtue, and the inducement was so strong that without the promise of marriage she would not have yielded her virtue. It may be absolute and uncon- ditional. The reason of that principle is well stated by a Court in one of our States and this Court will adopt the language of that Court in giving to you the reason of that requirement, which is as follows: "The object of the prose- cution is not to punish illicit intercourse, but the seducer, who by means of a promise of marriage destroys the chastity of an unmarried female of previous chaste character, and who thus draws her aside from the path of virtue and rectitude, and then fails and refuses to fulfill his promise. But when the seduction is accomplished by means of a promise of mar- riage, to be performed only upon the condition that the inter- course results in pregnancy, no promise to the woman can be implied from such yielding." Now, the Court used the word "when" because that is the word which is used in this quotation, but in delivering to you that instruction it is going to omit the use of the word "when" and substitute the word "if," so that you will understand that the instruction is given to you in a hypothetical way. So it will read this way: "If the seduction is accomplished by means of a promise of mar- riage, to be performed only upon the condition that the inter- course results in pregnancy, no promise to the woman can be implied from such yielding."

Fourth. There must be sexual intercourse. Mere illicit sexual intercourse is not sufficient. If the woman yields to the man wilfully or to gratify her lust, or passion, or a spirit of sexual curiosity, such an act of intercourse would

not be sufficient to constitute the crime of seduction as recognized under the law of this State.

Fifth. There must not only be a promise of marriage, sustaining to sexual intercourse the relation of cause to effect, but the sexual intercourse must be the result of deception and a promise to marry, to use the language here. Now, to use the language of our Supreme Court in part: "The means of deception need not be other than the mental attitude of the seducer when he makes the promise of marriage, by which he induces the woman to surrender her virtue, without intending to fulfill his promise, and thereby deceives her, then his conduct is in violation of the statute, and is punishable thereunder." Those are the three elements—promise of marriage, sexual intercourse as the result of deception, and promise of marriage which may be of the character just referred to in the extract taken from a decision of our Supreme Court.

Sixth. No conviction can be had upon the uncorroborated testimony of the prosecutrix. Corroboration, to use the language of our Supreme Court upon this question, is anything which tends to strengthen, add to, add weight, or credulity, or that which makes more certain. Corroboration is thus defined by our Court. To what elements of the offense must it relate in order to obtain a conviction? There must be corroboration of the promise of marriage, of the sexual intercourse, and of the deception. The Court did not make this law nor can the jury change it. The purpose of the enactment is that no conviction shall be had which rests upon the credibility and testimony of the woman alone. Now, corroboration need not be by direct or positive testimony, Mr. Foreman and gentlemen of the jury. If circumstances are established by some testimony other than that of the woman, they are entirely sufficient if you so regard them and they bring to the mind of the jury conviction beyond a reasonable doubt. If, therefore, in a given case a letter purporting to be written by the accused rests solely upon the

testimony of the prosecutrix it should not be considered by the jury. If there are any other facts or circumstances in the case, and that is solely for their determination, which strengthens, or adds weight or credulity to the testimony of the prosecutrix then that would be sufficient, and which is for the determination of the jury; but that should not result in a verdict of guilty unless they establish that conviction beyond a reasonable doubt. It is for you to say if there are facts and circumstances other than the testimony of the prosecutrix which corroborates her in the material elements referred to. If you so find and you are satisfied beyond a reasonable doubt thereof, if all the other elements of this offense are also established, it would be your duty to convict the defendant.

Seventh. No conviction shall be had if it be proved on the trial that the woman was at the time of the alleged offense. lewd and unchaste. The word chastity has been much considered and discussed by the Courts generally throughout the country, but the decisions are generally agreed upon this fact: That chastity means actual chastity as distinguished from reputation for chastity. In other words, the word relates to what the woman is rather than what she is reputed to be. In some of the States the State is required to prove affirmatively the chastity of the woman, because seduction involves in its very nature a previous chastity on the part of the woman. As already called to your attention, the statute of this State declares that if it should be proved on the trial that the woman was at the time of the alleged seduction unchaste or lewd no conviction can be had. The Supreme Court in passing upon that question has declared in a case that under that act, the chastity of the woman is presumed and the State is not called upon to establish it affirmatively as part of its case, but it is a matter of defense which the defendant is called upon to establish by the greater weight or preponderance of the testimony. In one branch of this Court, Mr. Foreman and gentlemen

of the jury, if a party relies upon a defense under certain
conditions and limitations they are required to make a for-
mal plea thereof, they are required to serve upon the other
party-litigant notice of those defenses upon which he will
rely at the trial of the cause.   This does not apply to a crimi-
nal case.   When a defendant comes into Court charged with
a crime, under the plea of not guilty he can set up without
formal notice or announcement, or without offering testi-
mony, any legal defense applicable to the case under con-
sideration.   For example, it might be the purpose of one
charged with crime to show at the trial of the case that at
the time of the commission of the alleged offense he was
somewhere else—that is, to rely upon an *alibi,* but if in the
course of the trial the State establishes the fact itself that he
was somewhere else at the time of the alleged offense—in
other words, if the State establishes that the weight or pre-
ponderance of the testimony is in favor of an *alibi,* or if it
develops sufficient testimony to raise a reasonable doubt as
to whether or not the defendant committed the act, under
such conditions or state of facts, it would be favorable to the
defendant without going upon the stand in his own behalf;
and if the State fails to establish guilt beyond a reasonable
doubt the defendant would, under those circumstances, be
entitled to an acquittal.   The same principle would apply to
one if charged with an act of violence, for example, homi-
cide, or assault and battery with intent to kill and murder, if
the defendant intended to rely upon the plea of self-defense,
which is an affirmative defense, he is not called upon to
announce the fact in Court, or to make a formal tender to
the State, and if in the course of the development of the
State's case that defense is made out the defendant may rely
upon that and would be entitled to an acquittal if the greater
weight or preponderance of the testimony is in favor of it,
or if it raises a reasonable doubt as to his guilt.   And so it
is in a case of this kind.   If, in a given case, while the State
is not called upon to establish affirmatively the previous

chaste character of the prosecutrix, yet if it develops in its case by the greater weight or preponderance of the testimony that the woman was lewd and unchaste, or if the testimony were developed by the State which would leave a reasonable doubt as to where the weight or preponderance of the testimony lay, it would be such a doubt as the defendant would be entitled to an acquittal. So, if the State itself in the development of its case produces testimony which raises a reasonable doubt as to whether or not the woman upon whom a seduction is alleged to have taken place is chaste, the defendant would be entitled to the benefit of that doubt, although the chastity of the woman is, as a matter of fact, an affirmative defense.

That is nothing more than the application of the familiar principle which runs through all the criminal offenses in which affirmative defenses are applicable, that the defendant is not called upon to make a formal plea, but he may take advantage of any defense without going on the stand, if it should be developed by the State in the development of its case. The Court is not going to say to you that you must give weight to any fact or circumstance which may have been disclosed by the testimony, but you are to take into consideration all facts and circumstances in the case which may have a bearing upon the question and reach a conclusion which is just and proper under the testimony in the case, giving it the credit and the weight to which you deem it is entitled.

Giving the defendant the benefit of every reasonable doubt arising in the case, if you are satisfied that he is guilty as charged it would be your duty to write a verdict of guilty. If you are not satisfied beyond a reasonable doubt that he is guilty it would be equally your duty to write a verdict of not guilty. In any event, Mr. Foreman, whatever verdict you find, write it out and under it write the word foreman.

If the defendant in this case is not guilty, then you should not convict him. But if he is guilty, why not convict him?

After the verdict the Court sentenced defendant as follows:

Let the within named defendant, W. A. Teal, be confined in the State penitentiary at hard labor for a period of 3 years or serve a like period at hard labor upon the public works of Greenville county.

It is further ordered and adjudged, not by way of fine or additional penalty, but as a condition upon which a part of the sentence herein imposed is suspended, that if the defendant will deposit, or cause to be deposited, the sum of $100 with the clerk of Court of Greenville county by the 1st day of January each year, to be paid by the said clerk in monthly or quarterly installments, at his pleasure, for the support and maintenance of the child of the prosecutrix alleged by her to be the child of the defendant, to the person or institution having legal custody thereof, for the term of 6 years beginning January 1, 1918, if such child shall live so long, and shall thereafter, on the 1st day of January of each year, pay, under the same terms and conditions, the sum of $150 until said child shall arrive at the age of 15 years, if he shall live so long; that so long as these conditions are fully performed, 18 months of the above sentence be suspended; but if there shall be a failure to comply with any payment herein provided, the suspension shall be revoked, and the defendant shall serve the entire 3 years.

*Mr. H. P. Burbage,* for appellant, cites: *As to corroboration of prosecutrix's testimony:* 82 S. C. 280; Black, p. 277; 49 L. R. A. 1198; 35 Cyc. 1333; — S. C. (MS.), 25 Cyc. 231; 22 L. R. A. 840; 105 S. C. 257. *As to unchastity of prosecutrix:* 35 Cyc. 1331. *As to exhibiting child to jury:* 37 Tex. 320; 48 Iowa 43; 30 A. M. Rep. 387. *As to sentence:* Section 2, art. XVII, Const. 1895; Crim. Code, section 389; 27 Stat. 773.

*Mr. F. A. Miller,* on same side, cites: *As to corroboration of prosecutrix:* 49 L. R. A. (N. S.) 1198; 77 Ark. —; 91 S. W. 30; 72 Ark. 582; 82 S. W. 202; 90 S. C. 138; 107 S. C. 397; 6 Encyc. Pl. & Pr. 690; 1 Bishop's New Crim. Pro., section 977; 27 L. Ed. 266. *Duty of Judge to determine whether there is any corroborating evidence to go to jury:* 105 S. C. 251; 156 W. S. 156; 39 L. Ed. 363. *As to proof of age of prosecutrix:* Crim. Code, sec. 389. *As to conditional promise of marriage:* 35 Cyc. 1336; 25 En. 231; 42 Am. St. Rep. 790; 22 L. R. A. 840; 51 L. R. A. (N. S.) 809, *et seq. As to admission of prejudicial and self-serving testimony:* 13 S. C. 389; 14 S. C. 628; 15 S. C. 540; 30 S. C. 85; 36 S. C. 524; 69 S. C. 72; 74 S. C. 78; 99 S. C. 504; 18 L. R. A. (N. S.) 771; 50 L. R. A. (N. S.) 1077; 1 R. C. L. 550, *et seq.;* 2 Wharton's Crim. Ev. 1311. *As to sentence:* Const., art. XVII, sec. 11; Crim. Code, sec. 389; 27 Stats. 773; 87 S. C. 466. *As to unchastity of prosecutrix:* 106 S. C. 283.

*Solicitor J. Robert Martin,* for State, cites: *As to corroboration:* 103 S. C. 214; 42 Am. St. Rep. 501. *As to Court leaving to jury the question whether or not there was corroboration:* 105 S. C. 252-4. *As to proof of age of prosecutrix:* 42 Am. St. Rep. 497. *As to chastity of prosecutrix:* 82 S. C. 281; 42 Am. St. Rep. 497-500. *There must be proof by defendant of want of chastity:* 105 S. C. 254; 42 Am. St. Rep. 492; 82 S. C. 281. *As to confessions of defendant:* 99 S. C. 505; 13 S. C. 389; 15 S. C. 540; 36 S. C. 524; 15 S. E. 588; 15 S. C. 544; 95 S. C. 442; 30 S. C. 92; 1 Strob. 388; 50 L. R. A. (N. S.) 1072. *As to Judge taking part in examination of witness:* 99 S. C. 505; 89 S. C. 534; 95 S. C. 94; Jones on Evidence, sec. 366, p. 458. *As to exhibiting child to jury:* 103 S. C. 213. *As to sentence:* Crim. Code, sec. 389; 88 S. C. 236-7; 27 Stats., p. 773.

January 21, 1918.

31—108.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The defendant was found guilty of seduction by means of deception and promise of marriage. The judgment was 3 years imprisonment. The defendant has appealed.

There are 18 exceptions, but the argument expressly makes the following issues, stated in dependent order, to wit: (1) The question of corroborating testimony was wrongfully left in the first instance to the jury, when it ought to have been decided by the Court. (2) The Court admitted incompetent testimony for corroboration, to wit, the testimony of the woman's father as to the defendant's confessions, and the profert of the woman's child; and there was admitted insufficient testimony for corroboration, to wit, the signature of the defendant on his appearance bond. (3) There was no corroborating testimony, and for that reason a verdict ought to have been directed. (4) The promise to marry which the woman testified to was one conditioned upon her becoming pregnant from the intercourse, and for that reason a verdict ought to have been directed. (5) The intercourse was lewd, and for that reason a verdict ought to have been directed. (6) The trial Judge in his charge violated the constitutional inhibition to charge in the facts, in that the Judge charged the jury that it was their duty to convict irrespective of the evidence. (7) The judgment pronounced by the Court is not warranted by law. These in their order.

It is true, as was held in the Livingston case, 105 S. C. 251, 89 S. E. 550, and the Turner case, 82 S. C. 280, 64 S. E. 424, 17 Ann. Cas. 88, that the Court must first judge of the existence of any corroborating testimony before the cause goes to the jury; and, if there be none such, the cause ought not to go to the jury. And it may be that in the instant case the Court did not expressly so rule; but the truth is the Court so held by necessary implication, for the issue of defendant's guilt was sent to the jury, and,

that being so, it would be an idle performance for us to now reverse the judgment because that Court did not in advance expressly hold that there was corroborating evidence, especially now that we hold that there was such testimony.

The woman's father testified that the defendant confessed to him that he had promised to marry the woman, and that the defendant had ruined the wisness' home. This transaction was at the father's house, at Traveler's Rest, in Greenville county, in January, 1917, after the defendant had been brought there from Hartsville by the woman's two brothers, in an automobile, and without process of law. The suggestion is that the defendant was under duress, and the confession was involuntary. There is no evidence of duress, except as that inference may be drawn from the father's testimony. There was no other witness who testified to the transaction. The Circuit Judge who saw the witness thought that the confession was voluntary, and there is no room to hold the contrary.

The woman's child had then been born; the defendant had then been married to another woman; the fire ablaze in a father's heart at the first discovery of so flagrant a wrong had turned to ashes; he testified that his sons were not then angry, but were flustrated; and he testified the defendant was not then terrified, but was penitent. These were subjects upon which the witness could testify by opinion, for they rest in opinion. So deplorable an event in the home might have inflamed one caste of kindred to have speedy and dire vengeance; but another caste, of equal virtue, might have suffered and waited. The Court saw the actors, and could best judge of the character of the confessions.

The child, born early in December, 1916, and 9 months after the association with the defendant in the last of Feb-

ruary or the first of March, was allowed in evidence. The defendant objected to profert of the child, but assigned no specific ground for the objection. The Court ruled that the child was competent to show the woman had a child, "as the law requires corroboration." The Court also said: "I understand you simply present that child and ask the prosecutrix if that is her baby, and for that purpose only." The Solicitor answered that the child was offered to prove seduction. The ruling of the Court was made a ground for a motion there for a new trial; and the Judge then said:

"The baby was not exhibited to the jury; on the contrary, the Court only admitted that to show that she had given birth to a child; it was not to show similarity."

The action of the Court was clearly within the ruling in State v. Whitaker, 103 S. C. 213, 87 S. E. 1001. In the cases cited by the appellant the child was exhibited to prove that it had the features of the alleged father; and the Courts of Wisconsin held that relationship could not be shown in that way.

The other challenged testimony is the signature of the defendant on his appearance bond. The exceptions do not challenge the competency of that signature. The argument questions the value of the signature as a corroborating circumstance. The signature was of utmost relevancy. The genuineness of the three letters of the defendant, hereafter referred to, had to be established by other testimony than the woman's to render them corroborative testimony. If the same hand signed the letters which signed the bond, then the letters were competent if their contents corroborate the testimony of the woman. The bond was signed "Archie," and two of the letters were so signed; the jury saw both.

The opinion we have announced with reference to the competency of the testimony tends, in large measure, to set-

tle the next question, and that most seriously argued, and that we have marked "3."

We are of the opinion that there was ample testimony to corroborate the woman, both as to the seduction and the promise to marry, and that the Court was right to submit the issue of the defendant's guilt to the jury. Jones, in his admirable work on Evidence, defines corroborative testimony to be "additional evidence, of a different character, to the same point."

The confession of the defendant, the birth of a child, and the defendant's letters, were all testimony of a different character from the woman's. Of the three letters of the defendant put in evidence one was written before the alleged seduction, and two were written after that event. It is not needful to reproduce them here; it is sufficient to say that they are of the most deceitful character, and that they tend to prove that the defendant bought a ring for the girl, and then put her away and declined to marry her, on the false ground that in spite of his profession of love for her that he could not "do a thing that might cause you not to live a happy life."

Without further recitation we conclude that there was ample testimony tending to prove that the parties had sexual intercourse—the whole cross-examination assumed that—that it came about by the artifice of the defendant, and upon his promise to marry the woman. That constitutes the offense under the statute.

Further, it is argued for a directed verdict that the promise to marry was made upon condition, and the condition was the pregnancy of the girl. It is true that if such was the case, then there was, of course, no promise to marry that would support this prosecution.

It is true, also, that the woman testified that no particular day had been set for the marriage. But it is common knowl-

edge that the promise to marry goes before a fixed day of marriage, and that the essential thing is the promise, and it may exist when no day has been set for its execution.

It is also true that the woman, upon her cross-examination, did answer "Yes" to questions which suggested a promise to marry conditioned upon pregnancy. But to the State's counsel she repeatedly and cleary swore that the defendant promised to marry her weeks before there was ever any cohabitation.

The appellants furthermore pressed the argument that the only reasonable conclusion to be drawn from the testimony was "that the alleged intercourse was by mutual consent," was lewd, lustful and habitual; and counsel say that was a question of law for the Court. That surely is not the law. It is too true that the parties to this transaction practiced gross immorality; she admitted the fact for herself; the defendant's counsel in effect admitted the fact for him. There is no suggestion by testimony or by argument that the woman was unchaste before she fell under the influence of the defendant. At that time she was but a country girl; she had never attended any but a neighborhood school; she lived in a remote section, and had not learned the wiles of men. The defendant was a graduate of Clemson College, 25 years old, and had got a glimpse of the world. He was a guest in the woman's home. The crisis in her life was the last of February or first of March, 1916. If she was then chaste, and the defendant's letter to her said she was then "perfect;" if she then gave her soul and body to the defendant, and the event proves it, and because of his expressed love for and promise to marry her, and all the circumstances show it—then the law does not abandon her because, having stooped to one act of folly, she found too late that men betray, and abandoned herself freely to the will and lust of her seducer. The defense really is, the greater

the ruin the less the remedy. One step off a precipice requires no count two steps.

The exceptions which challenge the charge of the Court as recited in the aforesaid sixth ground are of no force. Let the charge be reported; there is nothing in it which trespassed upon the facts; and there is nothing in it which suggested to the jury to find a verdict against the testimony.

The only other issue made by the arguments relates, not to the trial and to the verdict, but to the judgment of the Court. That ought to be reported.

The statute authorizes fine or imprisonment "at the discretion of the Court." Cr. Code 1912, sec. 389. The judgment was 3 years imprisonment. It is not clearly manifest that such a judgment is too severe, and it will, therefore, not be disturbed; the offense was great.

The further direction of the judgment was expressly not for additional penalty; it was done pursuant to the wide discretion lodged in the Court by the act of 1912. 27 Stats. 773. That act is the sequel of *State v. Abbott,* 87 S. C. 466, 70 S. E. 6, 33 L. R. A. (N. S.) 112, Ann. Cas. 1912b, 1189. In that case the Court said:

"The legislative power to set punishment for crime is very broad, and in the exercise of this power the General Assembly may confer on trial Judges, if it sees fit, the largest discretion as to the sentence to be imposed, as to the beginning and end of the punishment, and whether it should be certain or indeterminate or conditional."

The act provides:

"Circuit Judges of this State shall have the power and authority, in their discretion, to suspend sentences imposed by them, upon such terms and upon such conditions as in their judgment may be fit and proper." Act February 15, 1912 (27 St. at Large, p. 773).

If the condition named for a suspension is too hard, the defendant may accept the full 3 years of service; if the con-

dition for a suspension is agreeable, the defendant may accept it, and forego a part of the term of service. In either event, no larger penalty is put on the defendant; he has the advantage of election between penalties.

The judgment of the Circuit Court is affirmed.