### Duggins v. Commonwealth.

(Decided January 21, 1927.)

### Appeal from Washington Circuit Court.

1. Seducation—Proof Must Establish Every Element of Offense as Defined by Statute (Ky. Stats., Section 1214).—In order to constitute seduction as denounced by Ky. Stats., section 1214, proof must establish every element of offense defined therein.

2. Seduction—Affirmative Answer of Seduced Prosecutrix, Relative to Submitting to Intercourse in Reliance on Promise of Marriage, Held Not to Require Peremptory Instruction, in View of Previous Unconditional Marriage Promise (Ky. Stats., Section 1214).—In prosecution for seduction under Ky. Stats., section 1214, affirmative answer of prosecuting witness to question relative to submitting to intercourse in reliance on defendant's promise of marriage in event of trouble held not to require peremptory instruction for defendant, where she testified to an unconditional promise of marriage previously given.

3. Witnesses—Refusal to Require Seduced Prosecutrix to Answer Question Included in Previous Question Answered Affirmatively Held Not Erroneous (Ky. Stats., Section 1214).—In prosecution for seduction, under Ky. Stats., section 1214, refusal to require prosecuting witness to answer question relative to submitting to intercourse after defendant's promise of marriage if she became pregnant held not erroneous, since included in former question answered affirmatively.

4. Seduction—Evidence of Seduced Prosecutrix's Misconduct was Admissible Only if Occurring Within Reasonable Time Before Intercourse Giving Rise to Indictment.—Evidence of alleged misconduct of seduced prosecutrix was competent only if occurring within reasonable time before intercourse giving rise to indictment.

5. Seduction—Evidence that Parent Removed Children from School Taught by Seduced Prosecutrix Held Properly Excluded (Ky. Stats., Section 1214).—In prosecution under Ky. Stats., section 1214, for seduction, evidence that children had been removed from school taught by prosecuting witness held properly excluded.

6. Criminal Law—School Census Held Incompetent to Prove Age of Seduced Prosecutrix Without Proof that Person Furnishing Information was Dead (Ky. Stats., Section 1214).—In prosecution under Ky. Stats., section 1214, for seduction, school census held incompetent to establish age of prosecuting witness, without proof showing that person furnishing information to school census was dead.

7. Seduction—Prosecuting Witness' Submission Solely on Defendant's Promise of Marriage is Not Seduction (Ky. Stats., Section 1214).—Submission of prosecuting witness to intercourse solely because of defendant's promise of marriage does not constitute seduction denounced by Ky. Stats., section 1214, and hence instruction to that effect is properly modified by striking the word "solely" therefrom.

8. Criminal Law—Verdict is Flagrantly Against Evidence when it Shocks the Conscience.—The verdict may be said to be flagrantly against evidence when it is such as to shock the conscience.

9. Seduction—Evidence in Prosecution for Seduction Held for Jury (Ky. Stats., Section 1214).—Evidence in prosecution for seduction, under Ky. Stats., section 1214, held sufficient for jury.

10. Criminal Law—Court of Appeals Can Only Correct Errors of Law when Satisfied that Defendant's Substantial Rights have Been Prejudiced (Criminal Code of Practice, Section 353).—On appeal in criminal cases, Court of Appeals, under Criminal Code of Practice, section 353, can only correct errors of law, when upon consideration of whole case it is satisfied that substantial rights of defendant have been prejudiced thereby.

MARSHALL DUNCAN and R. L. BLACK for appellant.

FRANK E. DAUGHERTY, Attorney General, and CHARLES F. CREAL, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Affirming.

The appellant, whom we shall refer to as the defendant, is seeking to reverse a judgment imposing upon him a sentence of three years in the penitentiary for the seduction of a female under twenty-one years of age, under a promise of marriage. On July 9, 1923, Miss Hattie Collis began teaching school at Cherry Grove, in Washington county. She boarded with a Mr. Baker. The defendant had been a frequent visitor at the home of Baker for some time, and in the course of the next week or ten days, he made the acquaintance of Miss Collis. They were together frequently. He took her to surrounding towns, also took her to church and to local entertainments. They were together practically every night and usually on Saturday and Sunday. According to Miss Collis, their association soon ripened into a fondness for each other, and in the early part of September, 1923, they became engaged to be married, and, according to her, after and because of that promise on his part, she yielded to his request to have sexual intercourse with her in the latter part of September, 1923, which act was frequently thereafter repeated. The defendant admits the acts of intercourse which he says began in the latter part of October, 1923; that when he proposed it she agreed; that they were not engaged to be married at the time; have never been engaged to be married, and that nothing about marrying was ever said between them, except some light and jocular talk which had been indulged in at the home of Mr. Baker. The defendant says that this act was frequently repeated, and that nothing was said about marrying until several months after the beginning of this

practice, when she asked him if he was going to marry, her, and he told her he was not; that he never gave her an engagement ring, never introduced her into his home or to his family or friends as his betrothed. He testified that Miss Collis told him she was twenty-two years old.

Miss Collis testified that she was born on October 25, 1902, at Sulphur in Henry county, Kentucky; that her mother died when she was one year old and her father when she was four years old; that she learned her age from having seen it in the family bible, but that this bible was destroyed in a fire in the year 1916; that she started to school in 1909 and made a grade each year, graduating in 1921; she denied telling the defendant that she was twenty-two years old. This appears in her cross-examination:

> "Did Mr. Duggins not ask to have intercourse with you and you objected because you were afraid, and that he then told you that if anything came up he would marry you, and was it not because of his assurance that he would marry you in the event that any trouble came up that you submitted to him on the occasion that you say he seduced you, the latter part of September, 1923?"

To this she answered, "Yes."

We shall refer to this hereafter as question A. The defendant then propounded this question, which we shall refer to as question B:

> "Is it not true that defendant asked you to have intercourse with him and that you stated to him that you feared you would become pregnant and that defendant stated to you that if you should become pregnant he would marry you?"

The Commonwealth objected to this question and the court sustained the objection, whereupon the defendant made his avowal that if the witness were permitted to answer the question, she would truthfully answer "Yes."

At the conclusion of the evidence for the Commonwealth, the defendant moved the court to instruct the jury to find him not guilty. The court overruled the motion. Thereupon the court, on its own motion, over

defendant's objection, recalled the prosecuting witness, and asked her the following question:

> "Did the promise of defendant to marry you induce you to permit him to have carnal intercourse with you and would you have permitted him to have carnal knowledge of you except for this promise to marry you?" The witness answered by saying, "I would not have permitted him to have sexual intercourse except for his promise to marry me."

At the conclusion of all of the evidence the defendant renewed his motion for a peremptory instruction. It was again overruled, and that is the first alleged error of which he is complaining. It is his contention that the answer made by Miss Collis to question A was sufficient to warrant the court in instructing the jury to find him not guilty. Section 1214 does not forbid intercourse with, or carnal knowledge of, a female less than 21 years of age under promise of marriage, but forbids the seduction and carnal knowledge of such a female under such circumstances. To constitute the crime, the proof must establish every element of the offense as defined in the statute. The statute is not violated when in exchange for sexual favors *in praesenti* the man makes a blunt offer of marriage *in futuro,* conditioned upon conception resulting from the coition. Such a transaction looks more like bargain than betrothal, smacks more of barter than betrayal. The statute does not contemplate a seduction *de bene esse* that can be cancelled by a marriage *nunc pro tunc.* However, it has been held that where there is shown to have been a previous promise of marriage, and an engagement existing at the time, that the promise of the man made at the time of the woman's fall, to marry her "if anything happened," "If she became pregnant," or similar expressions, was not enough to keep the act from being a violation of the statute. Hoskins v. Com., 188 Ky. 80, 221 S. W. 230; Gillispie v. The State, 73 Tex. Cr. 585, 166 S. W. 135; Cherry v. The State, 112 Ga. 871, 38 S. E. 341; Taylor v. State, 113 Ark. 520, 169 S. W. 341; State v. Teal, 108 S. C. 455, 95 S. E. 69; State v. O'Hare, 36 Wash. 516, 79 P. 39, 68 L. R. A. 107: 104 Am. St. 970; 24 R. C. L. 765, et seq. 15; Ann. Cas. 228; 35 Cyc. 1336. The theory upon which those cases were written is that the woman did not then yield to the man because of her own natural impulses, and his promise to

shield her shame, but because of her reliance upon the man's previous unconditional promise of marriage, made at a time when copulation had not been mentioned, and as an effort on her part to please him, with full intention on her part of consummating the unconditional marriage engagement previously made, regardless of the consequence of the intercourse then proposed, and as a part of her purpose to induce the man to keep the promise of marriage he had previously given. Question A is almost identical with the evidence of Miss Woodward in the case of Hoskins v. Com., *supra*. In that case, Miss Woodward had testified to a previous promise of marriage made her by Hoskins, just as Miss Collis testified in this case to a promise of marriage made her by Duggins in the early part of September, before her fall for him in the latter part of that month, and further in the evidence of Miss Woodward, in the Hoskins case, we find that when she was asked what was meant by the word "danger" in a certain letter, she made this answer:

"He thought if anything happened. When he persuaded me I told him I was afraid to; I would rather not until we was married, and he said he would stand by me and would do what he said he would."

After carefully reading and rereading this question A and the answer, and then reading the part of the quoted evidence of Miss Woodward in the Hoskins case, we cannot escape the conclusion that they practically amount to saying the same thing in different words. Therefore, it follows that the court did not err in refusing to instruct the jury peremptorily to find the defendant not guilty, for the Hoskins case was affirmed.

This brings us now to a consideration of the next alleged error upon which the defendant relies for a reversal, and that is that the court erred to his prejudice when it refused to require the prosecuting witness to answer question B. It will be remembered that the prosecuting witness had already answered question A. Question A was all inclusive. The expression "if anything came up" would cover anything that might result from the proposed intercourse. Many things might have followed. Pregnancy might have resulted, disease might have been communicated; these parties might have been

discovered in their sin and a scandal started, or this indulgence may have developed in the prosecuting witness *a libido* so intense as to make of her a nymphomaniac; but whatever the result might be, it was covered by and embraced within the terms of the expression, "if anything came up." Therefore the inquiry made of the prosecuting witness in question B was already included in question A. If question B had been asked first, and the court had then declined to require the prosecuting witness to answer question A, a different state of affairs might have been presented; but as question B was necessarily included in question A, the failure of the court to require the witness to answer question B was not erroneous. It was for the jury, from the evidence, to find whether Miss Collis yielded to the defendant because she loved him and relied on and was trusting him to keep the promise to marry her which she claims he had made in the early part of September, or yielded because of her own natural desires, without a previous unconditional promise of marriage, and upon his promise to shield her from shame by marrying her if anything came up. In other words, to find if there was then existing between these people a previous unconditional promise of marriage which Miss Collis expected to carry out, regardless of what the consequence of this intercourse might be, and because of which previous promise she yielded, or did she yield for her own gratification, with no expectation of the defendant's marrying her if nothing came up as a result of the intercourse. To put it differently, was it love or lust that made her yield? The object of the defendant in making this inquiry was to show the promise of marriage made at the time of the intercourse was a conditional one, to be carried out only in event of the happening of something that was not certain. He was interested in proving the promise of marriage then made was a conditional one. What the condition was is of no importance. Was it conditional at all? The answer of the prosecutrix to question "A" shows that it was, and if she had not testified to another and an unconditional promise previously given, it would have been the duty of the court to direct the jury to acquit the defendant.

The defendant cites the case of Berry v. Com., 149 Ky. 398, 149 S. W. 824, and says the court erred in refusing to permit him to prove certain alleged misconduct

.of Miss Collis. This misconduct may have happened after her fall or long prior thereto. Such evidence could only be competent if it occurred within a reasonable time before the intercourse which is the subject of the indictment, and we so held in the Berry case. The court properly excluded the proffered evidence that J. W. Roberts took his children out of school. In no state of the case is that competent.

The defendant introduced Mrs. Hallie Pope, superintendent of schools of Henry county, and asked if she had the records of her office with her (the school census) and if they showed the date of the birth and the age of Miss Collis. The plaintiff objected to the question and the court sustained the objection, to which defendant excepted and made his avowal that if the witness had been permitted to answer the question she would have truthfully stated the records of her office disclosed that in the school census of the school year 1910-1911 for subdistrict No. 6 of education division No. 5 of Henry county, Kentucky, that Tom Collis, a person acquainted with the date of the birth of Miss Hattie Collis and with her age, listed the said Hattie Collis as having been born on October 25, 1892, and that the said record further showed that she was at that time nineteen years old and that the prosecutrix in this action was the same Hattie Collis whose age was shown by the records of her office. The defendant insists that this evidence was competent and that its exclusion was erroneous. Passing without deciding the question as to whether or not under sec. 4449 of the statute this witness was the custodian of this record, we have concluded this evidence was incompetent.

The defendant has cited this from the case of Bertram v. Witherspoon, 138 Ky. 116, 127 S. W. 533; Ann. Cas. 1912A 1217: "The school census is a public record. Parents are required to give in the ages of their children." If the defendant had carefully examined this Bertram case, he would have found that Thomas Witherspoon, the person who had given in the age of Porter Witherspoon to the party taking the school census, was dead at the time that this school census was offered as evidence. Having failed to show that Tom Collis was .dead, he was not entitled to introduce this school census as evidence of the age of Hattie Collis. This question of approving age by a school census is discussed with

some elaboration in the case of Hunley v. Com., this day decided, to which reference is now made.

The court on its own motion gave the following instructions:

> "If you believe from the evidence beyond a reasonable doubt that the defendant in this county and before the return of this indictment had carnal knowledge of the witness, Hattie Collis, under promise of marriage, at a time when she was under 21 years you should find the defendant guilty and fix his punishment at confinement in the penitentiary for not less than one or more than five years, in your discretion.
>
> "If you have a reasonable doubt of the defendant's being proven guilty you should acquit him."

The defendant moved the court to give the following instructions:

> "You are instructed that before you can find the defendant guilty of the offense charged in the indictment you must believe from the evidence beyond a reasonable doubt: First, that at the time defendant first had sexual intercourse with the prosecuting witness, Hattie Collis, that the said Hattie Collis was a chaste and virtuous woman. Second, that at said time she was under twenty-one years of age. Third, that the agreement of the said Hattie Collis to permit the defendant to have sexual intercourse with her was induced solely by his promise to marry her and that but for such promise she would not have agreed to permit him to have sexual intercourse with her."

The court struck the word "solely" from the third paragraph and added the whole of this instruction to those previously given. Defendant complains of the striking of "solely." This same contention was made by a defendant in a Texas court, and we regard this statement by the Texas court as a complete answer to his objection:

> "He contends that she must have yielded solely in reliance on the promise of marriage, and if her love for appellant was any part of her reasons for yielding it would not be seduction under our statute.

We have frequently held that, if the act of intercourse took place in exchange for a promise of marriage, without evidence of association, love and affection, it would be but a matter of barter and sale. Seduction necessarily implies that the man has won the affection of the young lady and obtained her confidence. That he has done so would not, in and of itself, make a case of seduction, as there must have been an engagement to marry upon which she had a right to rely. But without love and affection there could hardly be a case of seduction. It is the fact that one who has won the love and confidence of a young lady, and by reason of such fact, under a promise of marriage, he brings about her undoing, that render him criminally liable." Murrell v. State, 184 S. W. 831.

In Harris v. State, 18 Okla. 470, 196 P. 354, the Oklahoma court said:

"Defendant earnestly contends that the promise of marriage must be the sole and only inducement causing the female to yield. . . . In the majority of states it is sufficient if the promise of marriage is the chief inducing cause, and we think that the . . . rule is supported by the better reasoning. The word 'seduce,' in its ordinary use, implies some artifice, persuasions, or wiles. . . . The law of cause and effect, in its ordinary sense, should be applied. Otherwise the crime would not be seduction, but the mere bartering away of a woman's virtue under a promise of marriage. State v. Reeves, 97 Mo. 668, 10 S. W. 841, 10 Am. St. Rep. 349; Carney v. State, 79 Ala. 14; People v. Defore, 64 Mich. 693, 31 N. W. 585, 8 Am. St. Rep. 863; People v. Smith, 132 Mich. 58, 92 N. W. 776; Keller v. State, 102 Ga. 506, 31 S. E. 92; Clarke on Criminal Law 710."

Therefore, the action of the trial court in striking the word "solely" is approved, for if the jury believed from the evidence that the intercourse was submitted to by Miss Collis, solely because of the defendant's promise to marry her, then this was not a case of seduction, but just an ordinary case of fornication. As we have stated above, the statute, section 1214, does not forbid intercourse with a woman less than twenty-one years

of age under a promise of marriage, but does forbid the seduction of such a woman, and hence there is no room for the use of the word "solely" in this instruction, as some seductive wiles must appear.

The defendant's next complaint is that this verdict was flagrantly against the evidence. A verdict may be said to be flagrantly against the evidence when it is such as to shock the conscience. See McCurry v. Com., 205 Ky. 211, 265 S. W. 630. This does not measure up to that. It was the province of the jury to pass upon the question of his guilt, and we should not set up our opinions against theirs, especially when we consider the fact that the jury saw the witnesses and observed their demeanor on the stand. In cases of this kind knowledge of what occurred is necessarily often limited to the parties themselves. They are always the principal and often the only witnesses, and it has often been written that such a conviction can be sustained upon the evidence of the woman alone. In criminal matters this court was not organized to try cases. All we can do is to correct errors of law occurring upon the trial, preserved and presented by the record, and then only when, upon consideration of the whole case, the court is satisfied that the substantial rights of the defendant have been prejudiced thereby. See section 353 Criminal Code. No such error appears in this record.

The judgment is affirmed. The whole court sitting.