# Epperson v. Commonwealth.

November 11, 1949.

J. J. Tye for appellant.

A. E. Funk, Attorney General, and Zeb A. Stewart, Assistant Attorney General, for appellee.

JUDGE REES—Reversing.

This is an appeal from a judgment convicting Tom Epperson, Jr., of seduction under promise of marriage, and fixing his punishment at one year's imprisonment.

According to the prosecutrix, she first met appellant in front of the Coffee Pot Cafe in Pineville on a Saturday night in June, 1948. Epperson was a resident of Flat Lick in Knox County, and was a student at Union College in Barbourville. On the occasion in question he was in his automobile in Pineville with Jack Williams, a fellow student. The prosecutrix was with Pauline Wilson, who knew Williams. At the invitation of Williams, the two girls got in appellant's car, and the four drove to appellant's home in Knox County where

he procured another automobile which was newer than the one in which he had been riding and was equipped with a radio. Appellant then drove to Middlesboro and back to Pineville, arriving there about midnight. On the following night the prosecutrix, two other girls and two young men got in appellant's car about 7 p. m. The prosecutrix, who was the only witness introduced by the Commonwealth, testified:

"Q. What time of the day or night was it? A. That was about seven o'clock on Sunday night.

"Q. Was any one with him when he came up there? A. Jack Williams' brother was with him.

"Q. What did you do there? A. He picked me and Pauline Wilson and Otie Hubbard, my cousin, up.

"Q. What did you do then? A. We rode around.

"Q. Go ahead and tell what happened? A. We rode around a while and then he went up on the park, the Pineville park. * * * We got up there and he asked me to have intercourse with him, and I told him I didn't want to and he said if I would, he would marry me.

"Q. Where were you all at that time? A. Up on the park.

"Q. Were you in the car? A. Yes, sir.

"Q. Who else was in the car there? A. Pauline and my cousin; there was three more boys got out of the car, I didn't know the other two boys.

"Q. Who was in the car with you when you had that conversation with this defendant? A. Nobody but me and him.

"Q. Did anybody else hear that conversation? A. No, sir.

"Q. What did you say or what did you do? A. I didn't want to, I liked him at that time and he kept begging me until I did.

"Q. Did you have intercourse with him there? A. Yes, sir.

"Q. Why did you do that? A. He begged me in the notion."

The prosecutrix testified that she had sexual intercourse with appellant on one other occasion a few days later in the park. Appellant admitted one act, but denied that he promised to marry the prosecutrix or that marriage was mentioned. Three men testified that they had had sexual intercourse with the prosecutrix, and several witnesses, including two of her cousins, testified that she told them she had had intercourse with other men. There was proof that she had spent the night with a man named Shorter in a hotel in Pineville. Some of these alleged transactions occurred subsequent to June, 1948, and the court properly refused to admit the testimony as substantive evidence on the issue of previous chastity. Dr. R. R. Evans, a physician of Pineville, testified that he had known the prosecutrix several years, and about eighteen months before the trial, which occurred in June, 1949, found her suffering from syphilis. He advised her to go to an institution in Louisville for treatment, and she later reported to him that she had gone to Louisville and had been treated. The prosecutrix contradicted all of these witnesses.

Conceding that the evidence as to her previous chaste character was sufficient to take that question to the jury, we are firmly convinced that the evidence fails to show a violation of our seduction statute. KRS 436.010. There is not the slightest evidence that love or affection had any part in the transaction. The parties had known each other only twenty-four hours, and the act of intercourse occurred at their second meeting. According to the prosecutrix's own testimony, the appellant made her a business offer to marry her if she permitted him to have sexual intercourse with her. The statute does not contemplate that a woman may barter away her virtue under a promise of marriage. In Duggins v. Commonwealth, 217 Ky. 688, 290 S. W. 514, 518, the trial court struck the word "solely" from the third paragraph of an offered instruction which told the jury that before they could find the defendant guilty of the offense charged in the indictment they must believe from the evidence beyond a reasonable doubt, among other things, "that the agreement of the said Hattie Collis to permit the defendant to have sexual intercourse with her was induced solely by his promise to marry her, and that but for such promise she would not have agreed to permit him to have sexual inter-

course with her.'' After quoting with approval from a Texas case, infra, and an Oklahoma case, Harris v. State, 18 Okl. Cr. 470, 196 P. 354, the court said: ''Therefore the action of the trial court in striking the word 'solely' is approved, for if the jury believed from the evidence that the intercourse was submitted to by Miss Collis solely because of the defendant's promise to marry her, then this was not a case of seduction, but just an ordinary case of fornication.''

In the Texas case, Murrell v. State, Tex. Crim. App., 184 S. W. 831, cited in the opinion in the Duggins case, the court said: ''We have frequently held that, if the act of intercourse took place in exchange for a promise of marriage, without evidence of association, love, and affection, it would be but a matter of barter and sale. Seduction necessarily implies that one has won the affection of the young lady and obtained her confidence.''

The prosecutrix's own testimony indicates that she probably yielded to indulge her own sexual desires. The promise of marriage, if made, was not the motivating cause. The statute properly administered is a salutary one, but it is subject to abuse and is frequently used for a purpose not contemplated. As was said in Garrison v. Commonwealth, 243 Ky. 253, 47 S. W. 2d 1028, 1029: ''The purpose of the statute was to deter the evil denounced, and, while doubtless the results accomplished have justified its enactment, it has sometimes been used as an instrument to bring about injustice. Rarely is it invoked unless the woman expects to become, or has become, a mother. When that situation develops the promise of marriage is easily supplied, with the result that, with the woman's word against that of the man, a verdict of guilty usually follows.''

We think that the evidence was insufficient to warrant submission of the case to the jury, and it follows that the court erred in overruling appellant's motion for a directed verdict of acquittal.

The judgment is reversed with directions to grant appellant a new trial.